0502

SAVE CHARLESTON FOUNDATION, Appellant-Respondent, v. William E. MURRAY, individually and William E. Murray and Harold Adler, now or formerly acting as and under the name Save Charleston Partnership, Defendants-Respondents, of whom William E. Murray is Respondent-Appellant. Appeal of William E. MURRAY.

(333 S. E. (2d) 60)

Court of Appeals

*Charles S. Bernstein,* of *Bernstein & Manos, P. A.,* and *Ray P. McClain,* Charleston, *for appellant-respondent.*

*George J. Morris,* of *Morris, Duffy & Boone,* Charleston, *for respondent-appellant.*

*Morris D. Rosen,* of *Rosen, Oberman & Rosen,* Charleston, *for defendant-respondent, Adler.*

Heard Jan. 28, 1985.

Decided June 17, 1985.

GOOLSBY, Judge:

Save Charleston Foundation (Foundation) appeals from the circuit court's order granting summary judgment in favor of William E. Murray, individually, and Murray and Harold Adler doing business as Save Charleston Partnership (Partnership) and overruling its demurrer to identical counterclaims for conversion asserted by Murray and Adler. Murray cross-appeals from the circuit court's order striking his claim for attorney fees and costs from his counterclaim for conversion and from the circuit court's order sustaining the Foundation's demurrers to his counterclaims alleging causes of action for outrage, breach of contract accompanied by fraudulent acts, and *prima facie* tort. Adler does not appeal. We affirm.

These appeals present issues involving election of remedies, punitive damages, sufficiency of pleadings, and attorney fees and costs.

As the record discloses, the Foundation and Murray entered into negotiations in 1976 for the sale of certain real property owned by the Foundation. Their negotiations resulted in an agreement between the Foundation and Murray. The Foundation agreed to transfer the property to Murray or his designee for the sum of $375,000.00.

Pursuant to the agreement, the Partnership, Murray's designee, executed a promissory note on April 7, 1976, obligating itself to pay to the Foundation the sum of $375,000.00 "without interest, payments of said sum to be in annual installments equal to forty (40%) per cent of the 'net profits' " either derived from the sale of the subject property or otherwise produced by it.

Thereafter, the Foundation, believing "that the development and operation of the subject real property ha[d] been extremely profitable" and that the Partnership intended "to dispose of the . . . property . . . without making any payment whatsoever to the [Foundation] on the [note]," filed suit alleging three causes of action against the Partnership and Murray.

Each of the first two causes of action sought the recovery of actual damages in the amount of $375,000.00, the face amount of the note. The first cause of action alleged an action for anticipatory breach of contract. The second cause of action realleged the allegations of the first cause of action and further alleged an action for breach of contract. The third cause of action realleged the allegations of the first and second causes of action, sought $375,000.00 in actual damages and an equal amount in punitive damages and further alleged an action for fraud. The Foundation demanded judgment against Murray and the Partnership jointly and severally for actual damages in the amount of $375,000.00 and punitive damages in the amount of $375,000.00.

Shortly after the Foundation brought suit against Murray and the Partnership, the parties mutually agreed to submit the dispute to arbitration. Under the terms of the arbitration agreement, the Foundation agreed to dismiss its first

two causes of action "with prejudice" and its third cause of action "without prejudice." Another term of the agreement expressed the intention of the parties that the agreement was "to forever resolve the issues disputed."

Pursuant to the terms of the settlement agreement, the circuit court ordered the dismissal of the Foundation's first two causes of action with prejudice and its third cause of action without prejudice.

An arbitration panel later determined the Foundation was entitled to the net sum of $109,378.40, which the Partnership subsequently paid.

Afterward, the Partnership demanded the return of the promissory note. The Foundation refused to surrender it and brought the present suit.

The Foundation's present complaint alleges two causes of action: the first, against Murray, alleging fraud in the inducement of the contract for which the promissory note was given and the second, against Murray and Adler as partners in the Partnership, alleging fraudulent breaches of fiduciary duties owed to the Foundation by the Partnership under the promissory note. The complaint seeks actual damages in the amount of $240,621.60 and punitive damages in the amount of $2,406,216.00.

The answers to the complaint assert a general denial and an affirmative defense alleging that the Foundation's actions against them are barred because all matters concerning the funds due under the promissory note were finally determined in the former arbitration proceeding.

Murray on behalf of himself and as a partner in the Partnership and Adler as a partner in the Partnership also assert an action for conversion based on the Foundation's failure to deliver the promissory note after the Partnership satisfied the note and demanded its return.

Additionally, Murray's answer asserts counterclaims for outrage based on the Foundation's conversion of the promissory note and its bringing of the instant action, for breach of contract, accompanied by fraudulent acts consisting of the Foundation's failure to deliver the promissory note and its bringing of the instant action, and for *prima facie* tort based on the Foundation's filing of the instant action allegedly without justification.

The Foundation demurred to all counterclaims upon the ground that each fails to state a cause of action. The circuit court overruled the Foundation's demurrers to the counterclaims alleging a cause of action for conversion and, on its own motion, struck from these counterclaims the requests for attorney fees and costs. The circuit court, however, sustained the demurrers to the other counterclaims.

Prior to the hearing on the demurrers, Murray and Adler both moved for summary judgment. They asserted that the Foundation could not bring the instant action since it had previously elected its remedy by participating in the arbitration proceedings. The circuit court agreed and granted Murray and Adler summary judgment as to both causes of action. It also held that the "arbitration eliminated the question of actual damages [and left] no basis for punitive damages."

## I. Foundation's Appeal

### A.

The Foundation maintains the circuit court erred in holding that the Foundation may not pursue the instant action because it had elected its remedy against Murray and the Partnership when it agreed to arbitrate its causes of action for anticipatory breach and breach of contract and thereafter obtained a final and conclusive award through arbitration.

The doctrine of election of remedies involves a choice between two or more different and coexisting modes of procedure and relief afforded by law for the same injury. *Tzouvelekas v. Tzouvelekas*, 206 S. C. 90, 33 S. E. (2d) 73 (1945); *Walker v. McDonald*, 136 S. C. 231, 134 S. E. 222 (1926); *Boardman v. Lovett Enterprises, Inc.*, 283 S. C. 425, 323 S. E. (2d) 784 (Ct. App. 1984). Its purpose is to prevent double redress for a single wrong. 25 Am. Jur. (2d) *Election of Remedies* Section 1 at 646 (1966). Application of the doctrine should be confined to cases where double compensation of the plaintiff is threatened. *Id.* Section 3 at 650. When an identical set of facts entitles the plaintiff to alternative remedies, he may plead and prove his entitlement to either or both; however, the plaintiff may not recover both. *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 279 S. C.

468, 309 S. E. (2d) 763 (Ct. App. 1983). "This rule rests on the principle that the plaintiff should have a full opportunity to prove his claim to some form of relief, but he should not receive a double recovery." *Id.* at 473, 309 S. E. (2d) at 766. The invocation of one remedy constitutes an election of remedies that will bar another remedy consistent therewith where the suit upon the remedy first invoked reached the stage of final adjudication. *McMahan v. McMahan*, 122 S. C. 336, 342, 115 S. E. 293, 295 (1922). Arbitration is a mode of procedure and relief afforded by law. *See* S. C. Code of Laws Sections 15-48-10 to -240 (1976) (Cum. Supp. 1984).

Even though the Foundation's three causes of action in the former suit were based on different theories of recovery, they nonetheless were consistent. The Foundation, therefore, would not have been required to make an election had the suit proceeded to trial. It could have pleaded and proved all three causes of action but would have been limited to one recovery. *Robert Harmon and Bore, Inc. v. Jenkins*, 282 S. C. 189, 318 S. E. (2d) 371 (Ct. App. 1984); *see Carrigg v. Blue*, _____ S. C. _____, 323 S. E. (2d) 787 (Ct. App. 1984).

The controlling question, then, is not whether the Foundation would have been required to elect among its causes of action had the matter been tried rather than arbitrated but whether the Foundation has obtained a recovery arising out of its dispute with Murray and the Partnership. The Foundation clearly did so as a result of the arbitration proceeding.

Where the parties agree to submit a claim to arbitration and the claim is properly adjudicated by the arbitrators, the prosecution of the same claim on a different theory is barred. *See* 6 C.J.S. *Arbitration* Section 128 at 376 (1975). To conclude otherwise would be to sanction a double recovery and "would defeat the object of arbitration, which is to avoid litigation." 5 Am. Jur. (2d) *Arbitration and Award* Section 147 at 628 (1962).

We therefore hold that the Foundation, having obtained through arbitration a recovery on its claim against Murray and the Partnership, can no longer sue Murray and the Partnership for fraud, notwithstanding the Foundation's attempt to preserve its fraud cause of

action by agreeing to its dismissal "without prejudice." *See Gulledge v. Young*, 242 S. C. 287, 130 S. E. (2d) 695 (1963) (voluntary dismissal or nonsuit without prejudice merely terminates action and leaves the situation as though no suit had ever been brought). A party cannot agree to submit a claim to arbitration, receive a final and conclusive arbitration award, and then relitigate the claim employing a different theory of recovery.

## B.

The Foundation next contends that the circuit court erred in holding that the Foundation's recovery of actual damages by arbitration also resolved the issue of its right to recover punitive damages.

As we mentioned previously, the Foundation sought in the former action to recover actual and punitive damages on its fraud cause of action. In light of our holding that the Foundation is now precluded from pursuing its cause of action for fraud against Murray and the Partnership, we need not treat the Foundation's contention that it is entitled to recover punitive damages on its fraud claim. *See* 5 Am. Jur. (2d) *Appeal and Error* Section 760 at 201 (1962); *cf. Jones v. Atlanta-Charlotte Air Line R. Co.*, 218 S. C. 537, 63 S. E. (2d) 476, 26 A.L.R. (2d) 297 (1951) (specification of error relating to willfulness and wantonness became academic where verdict was for actual damages only).

## C.

The Foundation's final contention is that the circuit court erred in overruling its demurrers to Murray's and Adler's counterclaims for conversion and in holding that each states a counterclaim for conversion.

Each partner alleges in his counterclaim, among other things, that the Partnership delivered its promissory note to the Foundation, the Partnership satisfied its obligations under the note, the note's return was demanded, the Foundation refused to return the note, the Foundation converted the note to its own use and benefit, and he has been damaged as a result thereof. Both counterclaims seek actual and punitive damages.

In determining whether to grant a demurrer to a counterclaim for failure to state facts sufficient to constitute a cause of action, a court is strictly limited to the allegations of the counterclaim and cannot look beyond the counterclaim's four corners. *See Dagle Construction Co., Inc. v. Cerrati,* 274 S. C. 122, 262 S. E. (2d) 12 (1980). The counterclaim's allegations are deemed to be true and together with the relevant inferences reasonably deducible therefrom are to be construed liberally in favor of the counterclaimant. *See Skinner & Ruddock, Inc. v. London Guarantee & Accident Co.,* 239 S. C. 614, 124 S. E. (2d) 178 (1962).

An action may be maintained for the conversion of a promissory note. 18 Am. Jur. (2d) *Conversion* Section 18 at 167-68 (1965); 89 C.J.S. *Trover and Conversion* Section 13 at 538-39 (1955); *see Owens v. Andrews Bank & Trust Co.,* 265 S. C. 490, 220 S. E. (2d) 116 (1975); *Reynolds v. Witte,* 13 S. C. 5 (1880). Conversion may be predicated upon the detention of personal property, such as a promissory note, where there is a refusal to surrender the possession of the property after demand for its possession is made by a person entitled to its possession. 18 Am. Jur. (2d) *Conversion* Section 43 at 182-83 (1965). "[T]he right of an obligor to maintain an action for the conversion of a promissory note is not precluded because the note has been paid." *Id.* Section 80 at 207. Even when no actual loss has occurred, a party can be liable for at least nominal damages if a technical conversion is shown. 89 C.J.S. *Trover and Conversion* Section 161 at 642 (1955). Proof of nominal damages can support an award of punitive damages. *Cook v. Atlantic Coast Line R. Co.,* 183 S. C. 279, 190 S. E. 923 (1937).

Clearly, the Foundation's argument that the counterclaims fail to state a cause of action for conversion lacks merit. The circuit court, therefore, properly overruled the Foundation's demurrers to the counterclaims for conversion.

## II. Murray's Cross Appeal

### A.

In ruling on the Foundation's demurrers to the counterclaims for conversion, the circuit court on its own motion struck allegations in both counterclaims alleging that the

Foundation's conversion of the promissory note cost Murray and Adler unnecessary attorney fees and costs. Murray asserts on appeal this was error. We do not agree.

In *Rimer v. State Farm Mutual Auto Insurance Co.,* ██ ██ 248 S. C. 18, 27, 148 S. E. (2d) 742, 746 (1966), which involved an action for conversion, the Supreme Court plainly held that "recoverable damages" do not include the expense of employing counsel, except when so provided either by contract or by statute. *See Emmanuel Baptist Church v. Southern Mutual Church Ins. Co.,* 259 S. C. 223, 191 S. E. (2d) 255 (1972); *see also* S. C. Code of Laws Section 38-9-320 (1976). Likewise, other costs associated with defending an action brought on the promissory note are unrecoverable in a conversion action. *See Prickett v. A & B Electrical Service, Inc.,* 280 S. C. 123, 311 S. E. (2d) 402 (Ct. App. 1984).

### B.

The circuit court sustained the Foundation's demurrer ██ to Murray's counterclaim for outrage. Murray asserts this also was error. Again, we do not agree.

Murray alleges in his counterclaim that the Foundation's conversion of the promissory note and the Foundation's malicious assertion against him in the instant case of the two causes of action under the note have injured his "reputation and credit" and have caused him "great anguish and emotional distress." The circuit court held these allegations insufficient to state a cause of action for the tort of outrage.

Although we are aware of the difference between alleging a cause of action and successfully proving it [*see Todd v. South Carolina Farm Bureau Mutual Insurance Co.,* 276 S. C. 284, 278 S. E. (2d) 607 (1981), *appeal after remand,* 283 S. C. 155, 321 S. E. (2d) 602 (Ct. App. 1984), *cert. granted,* _____ S. C. _____, 328 S. E. (2d) 479 (1985); *Ford v. Hutson,* 276 S. C. 157, 276 S. E. (2d) 776 (1981)], the legal sufficiency of a pleading must be tested by the facts alleged therein. *See, e.g., Stanley v. S. C. State Highway Dept.,* 249 S. C. 230, 153 S. E. (2d) 687 (1967). We also recognize that conduct described by two members of the Supreme Court as "[a] petty squabble" can nonetheless constitute the tort of outrage. *See Bell v. Dixie Furniture Company, Inc.,* _____ S. C.

_____, 329 S. E. (2d) 431 (1985) (Littlejohn, C. J., dissenting).

Still, we prefer to think that there is some conduct involving personal interaction and causing emotional distress that, as a matter of law, is beyond the embrace of the new tort.

Even if Murray were able to prove his "reputation and credit" sustained injury and he suffered "great anguish and emotional distress" as a result of the Foundation's conversion of the promissory note and its malicious institution of the present law suit, he would not be entitled to a recovery on the basis of outrage.

One of the four elements the plaintiff must prove to establish the tort of outrage is that the defendant's "conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious and utterly intolerable in a civilized community.' " *Ford v. Hutson,* 276 S. C. at 162, 276 S. E. (2d) at 778. Merely converting someone's promissory note and maliciously bringing against the person a civil action based on the note is not conduct that, as a matter of law, "exceeds all possible bounds of decency" and is "atrocious and utterly intolerable." This conclusion becomes particularly evident when one considers the former conduct can afford a basis for launching an action for conversion [18 Am. Jur. (2d) *Conversion* Section 18 at 167-68 (1965); 89 C.J.S. *Trover and Conversion* Section 13 at 538-39 (1955)] and the latter can form the basis for maintaining an action for malicious prosecution. *Eaves v. Broad River Electric Cooperative, Inc.,* 277 S. C. 475, 289 S. E. (2d) 414 (1982); *Cisson v. Pickens Savings and Loan Ass'n,* 258 S. C. 37, 186 S. E. (2d) 822 (1972).

## C.

The circuit court also sustained the Foundation's demurrer to Murray's counterclaim alleging breach of contract accompanied by fraudulent acts. Murray maintains the circuit court erred in doing so. We once more agree with the circuit court.

Murray's third counterclaim alleges that Foundation breached the settlement agreement in which the Foundation and the Partnership agreed to arbitrate. He alleges two fraudulent acts accompanied the Foundation's breach of the

agreement. These acts were the Foundation's failure to deliver to the Partnership the promissory note that was the subject of the arbitration and the Foundation's bringing of the instant action on the note even though the note had "been paid in full."

When we construe the counterclaim's allegations and all its relevant inferences liberally in Murray's favor, we reach the conclusion that the counterclaim does not sufficiently allege a cause of action for breach of contract accompanied by fraudulent acts.

Although the cases involving breach of contract accompanied by a fraudulent act do not present an easy formula for defining a "fraudulent act," it is clear that the fraudulent act alleged must be an act done with the intent to deceive. H. Lightsey, *South Carolina Code Pleading* at 97 (1976); *see e.g., Lancaster v. Smithco, Inc.*, 238 S. C. 15, 119 S. E. (2d) 145 (1961). *Donaldson v. Temple*, 96 S. C. 240, 80 S. E. 437 (1913). In this instance, the counterclaim contains no allegation that either of the alleged fraudulent acts accompanying the breach of the agreement was committed with an intent to defraud either Murray or the Partnership.

## D.

Finally, Murray contends the court erred in sustaining the Foundation's demurrer to his fourth counterclaim alleging a cause of action known as *prima facie* tort.

Murray alleges in this counterclaim that the Foundation's "lawsuit is totally without merit" and that the Foundation brought this action "without economic or social justification" and "solely for the purpose of harming" him. No part of the fourth counterclaim is based upon the Foundation's retention of the promissory note, as was the second counterclaim.

The question of whether Murray can maintain an action in South Carolina for *prima facie* tort, a theory recognized in other states [*see* Annot. 16 A.L.R. (3d) 1191 (1967)], is not one we need now decide.

Even if we were to assume the cause of action is recognized in this state, Murray's counterclaim for *prima facie* tort would not be properly interposed. The purported cause

of action upon which the counterclaim is based did not exist at the time this action was commenced. *Russell v. Risher*, 272 S. C. 182, 249 S. E. (2d) 908 (1978); *Smart v. Charleston Mobile Homes, Inc.*, 269 S. C. 588, 239 S. E. (2d) 78 (1977); *cf. Detyens v. C. E. Maguire, Inc.*, ____ S. C. ____, 324 S. E. (2d) 648 (Ct. App. 1984) (cross-complaint must be based on cause of action existing at time action commenced).

The circuit court, therefore, properly sustained the Foundation's demurrer to Murray's fourth counterclaim.

For the reasons given, the order appealed from is

Affirmed.

SHAW and CURETON, JJ., concur.