2194

Douglas SHUPE and Anna Marie Shupe, Appellants v. John SETTLE; Oakridge Association, Inc.; and Hartford Accident and Indemnity Company, Respondents.

(445 S.E. (2d) 651)

Court of Appeals

*Henry L. Deneen* and *Kellum W. Allen,* West Columbia, *for appellants.*

*William P. Donelan, Heyward E. McDonald,* and *Brett A. Hickman,* Columbia, *for respondents.*

Heard Apr. 14, 1994.

Decided Jun2 20, 1994.

*Per Curiam:*

Douglas and Anna Marie Shupe brought an action against Oakridge Association, Inc. and its president, John Settle, for breach of contract and intentional infliction of emotional distress, and against Oakridge's insurer, Hartford Accident and Indemnity Company, for breach of contract and negligence. The trial court dismissed Hartford as a party, directed a verdict in favor of Oakridge and Settle on the cause of action for intentional infliction of emotional distress, and dismissed Settle as an individual defendant as to the breach of contract action. The jury returned a verdict in favor of the Shupes on the remaining breach of contract action. The trial court then granted Oakridge a judgment notwithstanding the verdict. The Shupes appeal. We affirm in part and reverse in part.

In August of 1986 Mr. and Mrs. Shupe bought a lot in the Oakridge Hunt Club on which they intended to build their retirement home. They then sought to borrow $65,000 through a particular lender, Cameron-Brown, at a favorable fixed interest rate. According to the testimony of the Shupes, they were unable to obtain the loan, however, because Settle, the president and treasurer of Oakridge, refused to provide them certain insurance information.[1] They ultimately obtained a loan from another company, but at a less favorable rate.[2]

With respect to the breach of contract claim, Mrs. Shupe testified she asked Settle for the insurance information several times. She further stated she attempted to acquire the information through the efforts of various other individuals, but was unsuccessful. She testified she and her husband gave "many days" notice in requesting both to look at the records

---

[1] A representative of Cameron-Brown testified that the loan would have likely been approved had they received the required insurance information.

[2] The Shupes also lost the application fee and credit report fees expended in trying to get the loan through Cameron-Brown.

and make a copy. Mr. Shupe testified his wife had "some bad experiences" in trying to obtain the necessary information so they decided to visit Mr. Settle. He stated as follows:

> We went to Mr. Settle's house early Saturday morning. I rang the doorbell. He answered the door and invited us in. I told Mr. Settle I was sorry to bother him so early in the morning but we have a critical situation here. We've been trying to get this information and we've had no success at all, and I wanted to know why we couldn't get that; that this is critical and I really need this. I told him that I'm subject to lose a great deal of money and it's causing my wife tremendous stress.
>
> He said, "Well, Mr. Shupe, I can't let you have that." I said, "I'll tell you what; let me look at the books and I'll copy down what it is, and you don't have to give it to me, or if you don't like that, you tell my lender and I don't even want to know; we just need that information." He said, "I'm sorry, Mr. Shupe; that's not possible; I can't allow you to have that information."

Settle himself admitted that the Shupes requested the information more than once. He also admitted that he probably told the proposed lender that he could not provide the insurance information.

The bylaws of the association provided that the Shupes, as members, were entitled to access to all books and records of Oakridge.

### ARTICLE IV—MEMBERS

*Section 4* — Any person acquiring a lot or an interest in a lot in Oakridge Hunt Club shall immediately become a member of the Corporation. . . .

\* \* \* \* \* \*

### ARTICLE XI — BOOKS AND RECORDS

*Section 1* — . . . All books and records of the Corporation may be inspected by any member or his agent or attorney for any proper purpose at any reasonable time upon the giving of one day's notice.

In its motion for judgment notwithstanding the verdict, Oakridge maintained the Shupes failed to give one day's notice and demanded copies of documents, which the Association

was not contractually obligated to provide. Oakridge argued the alleged damages resulted from the Shupes' inability to receive these copies of documents, not from their inability to inspect the books and records. The trial judge granted Oakridge's motion finding the bylaws did not obligate the Association to provide copies of the documents to the Shupes and, therefore, the Association did not breach any contractual obligation to the Shupes.

With respect to their claim against Hartford, the Shupes, in their complaint, asserted they were third-party beneficiaries of the contract between Oakridge and Hartford and therefore entitled to the insurance information.[3] The trial judge held the Shupes could not maintain an action against Hartford because they were not the direct beneficiaries of the contract between Oakridge and Hartford, but were merely incidental or consequential beneficiaries of the contract.

As to Mrs. Shupe's claim of intentional infliction of emotional distress against Settle, she testified as follows:

> At that time Mr. Settle said to me it is evident that I just don't understand the way things are done in this country, and I asked him why he would not give me the information, and during the conversation he was saying that he just did not like foreigners running the place.

Mr. Shupe testified that his wife was affected by the incident to the point she would not communicate with him, and would snap at him. The Shupe's daughter testified Mrs. Shupe was making a final plea over the telephone to Settle, telling him she was in fear of losing her home, when she burst into tears and was unable to talk further.

The trial court granted a directed verdict motion on the outrage cause of action, finding the evidence did not rise to the level necessary for the tort of outrage.

The trial court then determined that for the remaining breach of contract action, Settle could not be held personally liable, and removed him as an individual defendant. On the remaining breach of contract action against Oakridge, the jury

---

[3] While the Shupes testified at trial that they contacted Hartford directly in an attempt to obtain the insurance information, their complaint asserts only that Hartford failed to provide the insurance information to Oakridge upon the request of Oakridge.

returned a verdict in favor of the Shupes for $35,518. The court, however, granted judgment notwithstanding the verdict in favor of Oakridge.

## I.

On appeal, the Shupes argue the trial court erred in granting Oakridge's motion for judgment notwithstanding the verdict on the breach of contract action. We agree.

In ruling on a motion for judgment notwithstanding the verdict, the trial court must view the evidence and inferences therefrom in the light most favorable to the nonmoving party and must deny the motions if either the evidence yields more than one reasonable inference or its inferences are in doubt. The verdict will be upheld if there is any evidence to sustain the factual findings implicit in the jury's verdict. *Hilton Head Island Realty, Inc. v. Skull Creek Club*, 287 S.C. 530, 339 S.E. (2d) 890 (Ct. App. 1986).

The bylaws of the Association outlined a duty on the part of the Association to provide the Shupes the opportunity to inspect the records "at any reasonable time upon the giving of one day's notice." The testimony of the Shupes clearly shows they requested not only copies of the insurance information, but also requested they at least be given the opportunity to inspect the books. Inasmuch as the Shupes requested the information on numerous occasions, we find no merit to the Association's argument that one day's notice was not given that the Shupes wished to inspect the records. Further, it is apparent from Mr. Shupe's testimony regarding the Saturday morning visit that Mr. Settle absolutely denied the Shupe's request to inspect the records, regardless of whether or not the Shupes would have been willing to come back at a "reasonable time" after giving "one day's notice." In other words, Mr. Settle did not deny them access to the records for inspection on the basis of the Shupes' failure to give one day's notice, but denied it on the basis that he did not believe they were entitled to the information. It is well settled law that equity will not require the doing of a futile act. *Carmichael v. Dan Nance Corp.*, 274 S.C. 357, 264 S.E. (2d) 601 (1980). For the Shupes to have returned after the lapse of one day and again requested inspection of the books would clearly have been futile. The evidence shows Mr.

Settle had no intention of allowing inspection that day or any other day. We therefore find there was ample evidence for the jury to find Oakridge breached its contractual obligation to the Shupes.[4] Accordingly, we reverse the grant of Oakridge's motion for judgment notwithstanding the verdict and remand for reinstatement of the jury verdict on the breach of contract cause of action.

## II.

The Shupes also argue the trial court erred in granting ■ summary judgment in favor of the insurer, Hartford, because the existence of a third party beneficiary was a question of fact for the jury.

The record before us shows Hartford contested the ■ issue of third-party beneficiary in its motion for summary judgment based on the wording of the insurance policy. In her affidavit opposing Hartford's motion for summary judgment, Mrs. Shupe baldly asserts she and her husband were direct beneficiaries under the policy. The record contains only a "Certificate of Insurance" sheet indicating Oakridge had commercial property insured through Hartford at the time this action arose. It does not contain the insurance contract. Neither does it contain any other evidence which could indicate the Shupes were third-party beneficiaries of the insurance policy. When a plaintiff is faced with a defendant's motion for summary judgment that is supported by evidence, the plaintiff cannot defeat the motion by relying upon the mere allegations of his complaint, but must disclose the facts he intends to rely on by affidavit or other proof. *Dyer v. Moss*, 284 S.C. 208, 325 S.E. (2d) 69 (Ct. App. 1985). A conclusory statement as to the ultimate issue in a case is not sufficient to create a genuine issue of fact for purposes of resisting

---

[4]The Association also argues that if this Court finds error in the grant of judgment notwithstanding the verdict, we should then consider whether the trial court erred in not allowing Oakridge to argue Settle was acting beyond the scope of his authority in not providing the requested information. Upon a review of the record, we agree Settle was acting within the scope of his employment in dealing with the Shupes, and accordingly reject this argument. *See South Carolina State Budget & Control Board v. Prince*, 304 S.C. 241, 403 S.E. (2d) 643 (1991) (servant acting in furtherance of the master's business will be regarded as acting within the scope of his employment, although he may exceed his authority; any doubt as to whether servant was acting within the scope of his employment will be resolved against the master).

summary judgment. *Germann v. New York Life Ins. Co.*, 286 S.C. 34, 331 S.E. (2d) 385 (Ct. App. 1985).

It is clear Hartford relied on the policy as evidence to support its motion for summary judgment, but the Shupes failed to include the policy in the record.[5] Accordingly, we must assume Hartford put forth evidence supporting its motion. The Shupes failed to defeat that motion as they are not allowed to rely upon the allegation in their complaint that they were third-party beneficiaries. Neither is Mrs. Shupe's conclusory statement in her affidavit sufficient to resist summary judgment. Accordingly, the order granting summary judgment to Hartford is affirmed.

## III.

Finally, the Shupes argue the trial court erred in directing a verdict in favor of Settle because there was sufficient evidence of intentional infliction of emotional distress to create a jury issue. We disagree.

To establish intentional infliction of emotional distress or outrage, a plaintiff must establish: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it. *Holtzscheiter v. Thomson Newspapers, Inc.*, 306 S.C. 297, 411 S.E. (2d) 664 (1991).

Initially, the court determines whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and only where reasonable persons might differ is the question one for the jury. *Id.*

We agree with the trial court that the alleged actions of Settle were not so extreme and outrageous as to exceed all possible bounds of decency, and affirm the di-

---

[5] The burden is on appellant to furnish an adequate record from which this court can make an intelligent review. *Windham v. Honeycutt*, 290 S.C. 60, 348 S.E. (2d) 185 (Ct. App. 1986).

rected verdict in favor of Settle.

All other issues raised by the Shupes are manifestly without merit and are accordingly affirmed. Rule 220(b)(2), SCACR.

Affirmed in part, reversed in part and remanded.