2315

J. Leonard GATTISON, Respondent v. S.C. STATE COLLEGE, Albert E. Smith, Orlando White, Mool S. Shekhawat and Jimmy Ruff, Defendants, of whom S.C. State University, Albert E. Smith, Orlando White and Jimmy Ruff are Appellants.

(456 S.E. (2d) 414)

Court of Appeals

*Charles T. Speth, II* and *Leigh Mullikin Nason*, of *Haynsworth, Baldwin, Johnson & Greaves*, Columbia, and *Gwendolyn L. Fuller*, of *S.C. State University*, Orangeburg, *for appellants.*

*J. Lewis Cromer* and *Craig L. Berman*, of *Cromer & Mabry*, Columbia, *for respondent.*

Heard Nov. 3, 1994.

Decided Mar. 13, 1995; Reh. Den. Apr. 26, 1995.

CONNOR, Judge:

Leonard Gattison sued S.C. State University[1] under the Whistleblower Act and sued the named individual defendants

---

[1] On July 1, 1991, South Carolina State College officially became South Carolina State University.

under the common law tort of outrage. The jury returned a verdict of $75,000 actual damages in his favor on the whistle-blower cause of action. The jury also returned verdicts for Gattison against Albert Smith, Orlando White, and Jimmy Ruff on the outrage claims. The school and individuals appeal on several grounds. We affirm the whistleblower verdict against the university, but reverse the outrage verdict against the named individuals.

## APPEAL OF S.C. STATE UNIVERSITY

S.C. State University seeks a new trial on the whistle-blower cause of action based solely on two alleged procedural errors. We find no error and affirm the judgment.

### I. Deposition Issue

The university asserts the trial court erred in granting Gattison's motion for a protective order which terminated his pretrial deposition.

When Gattison moved to terminate his deposition, the university and individual defendants had questioned him for four days for a total of thirty and one-half hours. The deposition had generated over two thousand pages of testimony and two hundred exhibits. The judge granted Gattison's motion.

The university and individual defendants thoroughly cross-examined Gattison at trial, never claiming the termination of pretrial deposition hindered their efforts. The rules of civil procedure allow the trial judge broad latitude in limiting the scope of discovery when the discovery process threatens to become abusive. *Hamm v. S.C. Public Serv. Comm'n.*, 312 S.C. 238, 439 S.E. (2d) 852 (1994). We find no abuse of discretion by the court in this instance.

### II. Sequestration

The university next contends the court erred in allowing two witnesses who had not been sequestered to testify in reply. Again, we find no error.

At the beginning of the trial, the court ordered sequestration of all witnesses except the parties. During its case in chief, the university called a member of the Board of Trustees of the school as a witness. Among other things, the witness testified Gattison sent him letters complaining about the

school. He also described Gattison's conduct at a board meeting.

Gattison later called two reply witnesses, who had not been sequestered, to dispute these portions of the board member's testimony.

Whether a witness should be exempted from a sequestration order is within the trial court's discretion. *Constant v. Spartanburg Steel Prods., Inc.*, 316 S.C. 86, 447 S.E. (2d) 194 (1994). Given the limited nature of the reply testimony on these collateral matters, the court did not abuse its discretion by allowing these unsequestered witnesses to testify.

### APPEAL OF SMITH, WHITE, AND RUFF

As previously noted, the jury returned verdicts for Gattison for actual and punitive damages against Smith, White, and Ruff on the common law outrage cause of action.[2] They appeal: (1) the court's denial of several trial motions, and (2) the court's refusal to admit testimony of their net worth. We conclude the trial court should have directed a verdict for the individual defendants because the conduct Gattison alleged did not rise to the level required for outrage.

To establish the tort of intentional infliction of emotional distress, or outrage, the plaintiff must establish the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or knew that distress would probably result from his conduct; (2) the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Initially, the trial court determines whether the defendant's conduct was extreme and outrageous enough to permit recovery; the judge should submit the issue to the jury

---

[2] The verdicts were: against Albert Smith, $50,000 actual and $25,000 punitive; against Orlando White, $15,000 actual and $10,000 punitive; and against Jimmy Ruff, $15,000 actual and $10,000 punitive.

only where reasonable persons might differ on this issue. *Shupe v. Settle*, 315 S.C. 510, 445 S.E. (2d) 651 (Ct. App. 1994) (citing *Holtzscheiter v. Thomson Newspapers, Inc.*, 306 S.C. 297, 411 S.E. (2d) 664 (1991)).

Since the Supreme court first recognized outrage in *Ford v. Hutson*, 276 S.C. 157, 276 S.E. (2d) 776 (1981), a number of cases have discussed what conduct is extreme enough to permit recovery under that cause of action. In *Ford*, the Supreme Court found the conduct sufficiently severe to reach the level required for outrage or intentional infliction of emotion distress. There a home buyer subjected the plaintiff, a realtor, to repeated public browbeatings, obscenities, and threats over a two-year period. In fact, he even entered her home without permission and verbally attacked her in front of guests.

In *Corder v. Champion Road Machinery International Corporation*, 283 S.C. 520, 324 S.E. (2d) 79 (Ct. App. 1984), we held that mere retaliatory discharge for filing a workers' compensation claim, absent claims of verbal assaults or hostile, abusive encounters, did not rise to the level required for the tort of outrage. Moreover, later that same year, we ruled that a lawyer's act of overlooking an easement in a title search, though negligent, was not outrageous conduct as a matter of law. *Caddel v. Gates*, 284 S.C. 481, 327 S.E. (2d) 351 (Ct. App. 1984).

The following year we expressed our reluctance to permit the tort of outrage to become a "panacea for wounded feelings rather than reprehensible conduct" in *Todd v. South Carolina Farm Bureau Mutual Insurance Company*, 283 S.C. 155, 171, 321 S.E. (2d) 602, 611 (Ct. App. 1984), *rev'd on other grounds*, 287 S.C. 190, 336 S.E. (2d) 472 (1985). We held the fact that an independent contractor retained by Todd's employers to conduct an investigation lied and also asked Todd to take an illegal voice stress analysis test was not sufficient to establish outrageous conduct as a matter of law.

Justice Ness, in *Bell v. Dixie Furniture Company*, 285 S.C. 263, 329 S.E. (2d) 431 (1985), found there were sufficient questions of fact to preclude summary judgment where a furniture seller refused to accept the amount of money the purchaser had been ordered by a magistrate to pay. Two months after that opinion we held the conduct of converting a promissory

note and then maliciously bringing an action based on the note did not "exceed all possible bounds of human decency." *Save Charleston Foundation v. Murray*, 286 S.C. 170, 333 S.E. (2d) 60 (Ct. App. 1985). We noted "there is some conduct involving personal interaction and causing emotional distress, that, as a matter of law is beyond the embrace of the new tort [of outrage]." *Id.* at 180, 333 S.E. (2d) at 66.

We next ruled on what conduct rises to the level of outrage in *Folkens v. Hunt*, 290 S.C. 194, 348 S.E. (2d) 839 (Ct. App. 1986). There we held Hunt's conduct, consisting of verbally abusive accusations that plaintiff owed hundreds of thousands of dollars in taxes and filed fraudulent tax returns, did not rise to the standard of outrageousness the law required. We noted that "not all conduct . . . causing emotional distress in a business setting may serve as a basis for an action alleging outrage." *Id.* at 203, 348 S.E. (2d) at 845.

In 1987 we held the act of plaintiff's ex-husband and the parties' children involuntarily committing plaintiff to the state hospital did not reach the standard required for outrage where the defendants acted in good faith and in a reasonable manner. *Manley v. Manley*, 291 S.C. 325, 353 S.E. (2d) 312 (Ct. App. 1987). Approximately two months later we ruled, in an employment setting, that the trial judge properly granted summary judgment to a corporation. We held management's alleged acts of continually denying plaintiff's medical excuses and of willfully engaging him in verbal arguments over his absences, knowing of his inability to talk because of vocal chord surgery, did not reach the extreme and atrocious level required for outrage. *Butts v. AVX Corp.*, 292 S.C. 256, 355 S.E. (2d) 876 (Ct. App. 1987).

Once again, in *Andrews v. Piedmont Air Lines*, 297 S.C. 367, 377 S.E. (2d) 127 (Ct. App. 1989), we found the conduct about which the plaintiff complained did not rise to the level required for outrage. There, Andrews, who was in a wheelchair, alleged Piedmont had removed him from the departure gate at the airport because he was not able to travel, and placed him in a baggage area near the ticket counter. The evidence was undisputed, however, that Piedmont employees called the hospital to come get Andrews, offered him something to drink, and occasionally checked on him.

*Wright v. Sparrow*, 298 S.C. 469, 381 S.E. (2d) 503 (Ct. App.

1989), is most similar to the case at hand. Wright alleged Sparrow plotted to build a case to justify firing her by loading her with responsibility while stripping her of authority, and by changing the way she should perform her duties and then accusing her of not following directions. We held, absent hostile or abusive encounters, or coercive or oppressive conduct, Sparrow's actions were not so extreme and outrageous as to exceed all bounds of decency.

The Supreme Court deviated from the string of cases finding conduct not outrageous in *McSwain v. Shei*, 304 S.C. 25, 402 S.E. (2d) 890 (1991). In *McSwain*, an employee was forced by her employer to perform exercises which aggravated a bladder problem. She alleged her employer knew about her bladder problem, which caused her to lose control of her bladder during the exercises, and knew her physician had advised her not to exercise. Nevertheless her employer told her she must continue to exercise or she would be fired. The exercises took place in front of others who observed her incontinence. Justice Toal held the jury could find this conduct, even in the workplace environment, "outrageous and intolerable in a civilized society." *Id.* at 29, 402 S.E. (2d) at 892.

Thereafter, Justice Chandler held in *Holtzscheiter v. Thomson Newspapers*, 306 S.C. 297, 411 S.E. (2d) 664 (1991), that a newspaper referring to Holtzscheiter's daughter, who was murdered, as "a drifter," and high school dropout who "had no family to encourage her to continue her education" fell short of the extreme standard required for outrage.

There were three cases decided on this issue in 1994. All found the conduct which plaintiff alleged did not reach the threshold required for outrage. We held in *Shipman v. Glenn*, 314 S.C. 327, 443 S.E. (2d) 921 (Ct. App. 1994), that a supervisor's conduct in ridiculing the speech impediment of and threatening to fire an employee who had cerebral palsy did not provide a sufficient basis for intentional infliction of emotional distress. Moreover, we further found a homeowner's association president's refusal to give members access to the association's books and records in violation of the association's bylaws did not constitute outrage. *Shupe v. Settle*, 315 S.C. 510, 445 S.E. (2d) 651 (Ct. App. 1994). Approximately one month later we held a doctor's action in mistakenly informing a patient's daughter that her father had died, when in fact he was

still alive, was not sufficiently outrageous for intentional infliction of emotional distress. *Strickland v. Madden,* — S.C. —, 448 S.E. (2d) 581 (Ct. App. 1994).

We now review the evidence in this case in the light most favorable to Gattison, the party opposing the motion for directed verdict.

Leonard Gattison graduated from S.C. State College. He returned there in 1978 as an internal auditor. In 1984, Dr. Maceo Nance, the president of the university at that time, appointed Gattison to the position of Director of Internal Audits. Gattison reported directly to Dr. Nance and had an office suite and a secretary. At that time he was classified as a Grade 38 state employee.

In 1986 Dr. Albert Smith became president when Dr. Nance retired. He assigned supervision of the Office of Internal Audit from the President's Office to the Vice-President for Business and Finance, Claybon Harris. According to Gattison, this reassignment presented a conflict of interest for internal audits because he lost the ability to make independent judgments. He further says Harris essentially dissolved the auditing department and moved his office out of the main administration building.

In mid-1987, when the Director of Personnel position became vacant, Gattison expressed an interest in that position. He decided not to apply after Claybon Harris informed him Jimmy Ruff had already been chosen for the position. Harris also told Gattison his position would be reclassified from a Grade 38 to a Grade 43, which would allow him to report directly to President Smith. Instead, after Ruff was hired, Ruff decided to reclassify Gattison's position to a Grade 40. Moreover, he improperly made this decision after he had accepted the S.C. State job, but while he was still employed in Columbia at State Personnel.

After 1987, Gattison had to issue handwritten reports because Claybon Harris would not allow him to hire a secretary. Gattison's office was moved to a "staff lounge" in the administration building in December of 1988. He had problems with his assigned parking space. The Internal Auditor's office was not listed in the college phone book. Gattison claims Dr. Smith told him no one listened to him and no one wanted him to be independent.

In the spring and summer of 1989, Gattison reported violations concerning employment of temporary personnel at the college to Harris and Ruff. They took no action. Gattison began to send reports to the Board of Trustees. He continued to send reports to all Board members except one who advised him in a letter to quit corresponding with him. The Board passed a motion in July 1989 to have the Office of Internal Auditor equipped and to have the auditor report directly to the President. Gattison continued to complain to Claybon Harris about the lack of independence, support, staff, and funding for the Internal Audit Office.

In August of 1989, Gattison contributed to a letter sent to Rep. Herbert Kirsh concerning irregularities at S.C. State. The letter indicated, among other things, improper actions by Claybon Harris in selling food items to the school through his personal business. It also reported irregularities in hiring temporary employees. Ultimately, the Commission on Higher Education began an investigation into the allegations. Gattison claims he had taken sick leave in October for job-related stress. He testified college personnel failed to inform him the CHE was trying to locate him. Moreover, when he returned from sick leave, Gattison met with Harris and Ruff. Harris accused him of misplacing some of Harris's travel vouchers, taunted him, and told him the college was going to fire him. These events occurred a few days before the CHE interview. The commission interviewed Gattison on November 8, 1989. After the interview, Gattison testified Harris retaliated against him again by changing his secretarial support. The CHE committee issued its report on November 15, 1989. Claybon Harris resigned in December of 1989.

On November 28, 1989, Dr. Smith wrote Gattison that his supervision would be transferred to the President. However, a follow-up letter indicated the work assignments would come to him through the Special Assistant to the President, Dr. Orlando White. Gattison testified from that point forward the work environment became hostile. President Smith, Orlando White, and Jimmy Ruff humiliated him at meetings. Specifically, he says he was given short notice concerning upcoming meetings, was required to sit in a small chair, and was prohibited from taking notes. These events caused him severe stress and depression and ultimately destroyed his career as an audi-

tor. Gattison filed this action in January of 1991.

Viewing the evidence in the light most favorable to Gattison, these facts do not rise to the level required for outrage in South Carolina. Gattison has shown no hostile or abusive encounters, or coercive or oppressive conduct. *Wright v. Sparrow*, 298 S.C. 469, 381 S.E. (2d) 503 (Ct. App. 1989). While the facts Gattison alleges may demonstrate unprofessional, inappropriate behavior, they fall short of conduct that exceeds all possible bounds of decency and is atrocious and utterly intolerable in a civilized society. Therefore, the outrage cause of action should not have been submitted to the jury.[3]

Affirmed in part and remanded in part.

HOWELL, C.J., and GOOLSBY, J., concur.

---

[3] Because we reverse on this issue, we need not address the individual appellants' other issues.