THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Tom Hansson, Appellant,
v.
Scalise Builders of South Carolina, and Sam Scalise, Respondents.
 
 
 

Appeal From Horry County
 John  L.  Breeden, Circuit Court Judge

Unpublished Opinion No. 2005-UP-340
Heard January 13, 2005  Filed May 18, 2005

REVERSED AND REMANDED

 
 
 
Chalmers Carey Johnson, of Charleston, for Appellant.
Henrietta U. Golding, of Myrtle Beach, for Respondents.
 
 
 

BEATTY, J.:  Tom Hansson appeals the grant of summary judgment to his former supervisor and employer, Sam Scalise and Scalise Builders of South Carolina, in Hanssons action against them for, among other things, intentional infliction of emotional distress.[1]  We reverse and remand.
FACTS
Employed by Scalise Builders in March 1997, Tom Hansson performed maintenance and general construction work until he resigned in February 2000.  During Hanssons tenure at Scalise Builders, owned by Sam Scalise, Hansson experienced what he alleges was harassment in a hostile environment that began only five or six months after he started work.   
The environment Hansson described is one in which he was greeted daily with, Good morning, fag.  Hansson also heard rumors co-workers thought he was a faggot, and he was the subject of graphic comments.  The comments directed to Hansson included, How does it feel to have a gerbil up the ass?, [Eating a banana] must come natural to you, doesnt it, Tom?, and Ive got your hog.  You want to come in the closet?  The comments were made by both Hanssons co-workers and by Scalise himself.  For example, Scalise asked Hansson in front of two other co-workers if Hansson would perform oral sex upon Scalise for money.  
On one occasion when Hansson expressed an unwillingness to measure a kitchen, Scalise said, You dont need an attitude like that. . . . I ought to take you upstairs and f--- you myself.  In November 1999, Hansson was called into Scalises office.  Scalise said, Youve got a nice house; nice car; nice wife. . . . Youre starting to get under my skin.  The two talked and, at the end of the conversation, with a co-worker present, Scalise goosed Hansson, by sticking his finger in Hanssons clothed anus. 
According to John Goodhart, a former supervisor of Hansson at Scalise Builders, the comments were jokesjokes of the variety Hansson admits are normal at construction sites.  In fact, Hansson himself joked by carrying around a dolls head in his hand and asking co-workers, Do you want a little head?  Hansson admitted that he often used profanity and was not offended by such language.  When asked if he had ever complained to a supervisor, Hansson testified the supervisor was usually present and knew what was happening.  He also testified he thought telling Scalise he was offended was fruitless; he [d]idnt think it would do any good and [j]ust figured it was the way it was.  He testified one Scalise employee, a painter working in a different area, harassed him on a weekly basis and sometimes called him names on a daily basis.  However, Hansson testified he did not leave his job because he liked what he was doing and 99% of the time nobody bothered him.  
Hansson did not see a doctor or counselor for the mental anguish he claims to have suffered.  He did not lose time from work or experience effects on his marital relationship or ability to work.  However, Hansson implicitly claimed the harassment at work caused him to grit his teeth at night, for which he saw a dentist once or twice.  It also caused him to wake up repeatedly at night for about one year.  He resigned from Scalise Builders in March or April 2000 because of the harassment and to start his own business.  
After resigning, Hansson sued Scalise and Scalise Builders for intentional infliction of emotional distress, breach of contract, slander, and wrongful retention of wages.  Scalise and Scalise Builders filed a motion for summary judgment, which the trial court granted.  Hansson appealed.
STANDARD OF REVIEW
The appellate court reviews a grant of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP. Lanham v. Blue Cross & Blue Shield of South Carolina, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002).  Granting summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Id.  Where the parties dispute the conclusions to be drawn from undisputed facts, summary judgment is improper.  Tupper v. Dorchester County, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997).  When making this determination, the court should view the evidence and all inferences that can be drawn reasonably therefrom in the light most favorable to the nonmoving party.  Lanham, 349 S.C. at 361-62, 563 S.E.2d at 333. 
LAW/ANALYSIS
Hansson argues the trial court erred in finding no genuine issue of material fact existed as to whether the conduct in question was outrageous in his intentional infliction of emotional distress claim.  We agree.  
To recover for an intentional infliction of emotional distress claim, the plaintiff must show: 

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct . . .; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community . . .; (3) the actions of the defendant caused the plaintiffs emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it.

Folkens v. Hunt, 290 S.C. 194, 203, 348 S.E.2d 839, 844 (Ct. App. 1986) (quoting Ford v. Hutson, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981)). 
In reviewing whether summary judgment is appropriate regarding a claim for intentional infliction of emotional distress, the trial court must first determine whether the defendants conduct may be reasonably regarded as so extreme and outrageous as to allow recovery.  Butts v. AVX Corp., 292 S.C. 256, 262-63, 355 S.E.2d 876, 880 (Ct. App. 1987); Folkens, 290 S.C. at 203, 348 S.E.2d at 844-45.  Once the initial showing is made that the conduct could be reasonably considered extreme and outrageous, the matter should be submitted to a jury to determine whether the conduct was sufficiently extreme and outrageous to result in liability.  Fleming v. Rose, 338 S.C. 524, 537, 526 S.E.2d 732, 739 (Ct. App. 2000), revd on other grounds, 350 S.C. 488, 567 S.E.2d 857 (2002).  [T]he judge should submit the issue to the jury only where reasonable persons might differ on the issue.  Gattison v. South Carolina State College, 318 S.C. 148, 151-52, 456 S.E2d 414, 416 (Ct. App. 1995); see Ford, 276 S.C. at 166, 276 S.E.2d at 780 (explaining it is the province of the jury to make a factual determination).  One instance in which the matter should be submitted to the jury is when the business relationship may make the conduct excusable.  Ford, 276 S.C. at 166, 276 S.E.2d at 780 (noting a business relationship may sometimes justify ones conduct and make that conduct excusable or at least less culpable, but it is at most a factor to be considered and weighed by the jury).
To be outrageous, the conduct generally must include hostile or abusive encounters or coercive or oppressive conduct.  Fleming, 338 S.C. at 538, 526 S.E.2d at 739 (citations omitted); see Gattison, 318 S.C. at 152, 456 S.E.2d at 416 (noting that mere retaliatory discharge . . . absent claims of verbal assaults or hostile, abusive encounters, did not rise to the level required for the tort of outrage); Wright v. Sparrow, 298 S.C. 469, 473, 381 S.E.2d 503, 506 (Ct. App. 1989) (finding the conduct was not so extreme and outrageous as to exceed all possible bounds of decency without evidence of hostile or abusive encounters or oppressive abuse).  A single encounter of verbal abuse may be insufficient to prevent summary judgment.  See Shipman v. Glenn, 314 S.C. 327, 329, 443 S.E.2d 921, 923 (Ct. App. 1994) (affirming the trial courts grant of summary judgment in a case involving a single incident in which the employer ridiculed an employees speech impediment and threatened to terminate the individuals employment).  However, evidence of repeated verbal abuse may present sufficient evidence of outrageous conduct.  See Ford, 276 S.C. at 166, 267 S.E.2d at 780 (holding evidence of repeated incidents of vicious, cruel, profane, oral accosting was susceptible to the inference it was not a mere complaint . . . but was instead a continuing pattern of highly questionable conduct over a period of almost two years, and thus sufficient to support the jury verdict).
Here, the trial court found Hansson did not experience hostile or abusive encounters or coercive or oppressive conduct.  Relying on Hanssons deposition testimony that he was happy at his job because he was left alone 99% of the time, the court determined that the conduct was not so extreme and outrageous as to meet the second element of an intentional infliction of emotional distress claim.  
Viewed in a light most favorable to Hansson, the evidence, at the very least, is conflicting and susceptible to more than one reasonable inference. The conduct of Scalise and Scalise Builders included constant commentary about Hanssons sexuality, repeated profanity directed towards Hansson, and even lewd physical contact.  These abusive encounters were not limited to a single incident and Hansson indicated he suffered from emotional distress, including sleeplessness and teeth grinding, as a result.  Although the evidence conflicts as to the frequency of the harassment, it does suggest repeated occurrences.  The evidence also conflicts as to whether the comments were made in a joking manner as opposed to a hostile one.  Furthermore, the fact that the behavior of the defendants occurred on construction sites and the fact that Hansson himself used profanity and made off-color jokes may serve to make the conduct excusable.  However, such a decision is for a jury to make.  Because reasonable minds could differ on whether the conduct of Scalise and Scalise Builders was outrageous, the trial court erred in failing to submit the matter to the jury. 
CONCLUSION
Hansson sufficiently established that reasonable minds could differ as to whether the conduct of Scalise and Scalise Builders was outrageous.  Because he demonstrated a genuine issue of material fact regarding outrageousness, summary judgment was not appropriate.  Thus, the decision of the trial court is
REVERSED AND REMANDED.
 HUFF, JJ., concurs.
 KITTREDGE, JJ., dissents in a separate opinion.
 KITTREDGE, J.:  I respectfully dissent.
While I agree with the majoritys conclusion that reasonable minds could differ as to whether the conduct of Scalise and Scalise Builders was outrageous, I find Hansson failed to show any facts legally sufficient for a jury to conclude he actually suffered severe emotional distress as a result of the alleged conduct.  I would therefore affirm the circuit courts grant of summary judgment in favor of Respondents Sam Scalise and Scalise Builders. 
As set out by the majority, our supreme court has adopted a rule of liability relating to intentional infliction of emotional distress that requires a plaintiff to prove four distinct elements. See Ford v. Hutson, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981) (our supreme courts first articulation of the four element test for establishing intentional infliction of emotional distress).  I would concur in the majoritys finding that a proper jury question is raised as to the first three of these four elements regarding (1) the intentional or reckless nature of the alleged conduct, (2) the degree to which the alleged conduct is sufficiently extreme and outrageous, and (3) the potential causal connection to the claimed distress.  However, I part company with the majority on the question raised by the fourth element: whether the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it. Id. (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).  
In articulating the fourth element of the tort in this manner, our supreme court has clearly indicated that, to satisfy this element, more must be shown than mere emotional distress.  Rather, the standard expressed in the rule requires a plaintiff to show he suffered a severely disabling emotional response to the defendants conduct.  Comment j of section 46 of the Restatement (Second) of Tortsupon which our supreme court relied heavily in adopting this rule of liability[2]elaborates on this requirement:
Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  It is only where it is extreme that the liability arises.  Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people.  The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.  The intensity and the duration of the distress are factors to be considered in determining its severity.  Severe distress must be proved; but in many cases the extreme and outrageous character of the defendants conduct is in itself important evidence that the distress has existed. 
. . . .
It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.
Restatement (Second) of Torts § 46 cmt. j (1965) (emphasis added); see also Rhodes v. Security Fin. Corp. of Landrum, 268 S.C. 300, 233 S.E.2d 105 (1977) (holding that there is no liability for emotional distress without a showing that the distress inflicted was extreme or severe and where there is no showing that plaintiffs emotional upset was other than transient and trivial).[3]  Therefore, the severity of emotional distress not only bears on the amount of recovery, but in the first instance [i]t is for the court to determine whether on the evidence severe emotional distress can be found. Restatement, supra.
The burden upon plaintiffs to show more than minoror even moderateemotional distress as a prerequisite to any liability is in keeping with the rigorous analysis our courts have applied to claims of intentional infliction of emotional distress.  Indeed, we have noted that claims arising under this tort should be scrutinized closely by the trial and appellate courts so that this cause of action is not allowed to become a panacea for wounded feelings rather than reprehensible conduct. Todd v. South Carolina Farm Bureau Mut. Ins. Co., 283 S.C. 155, 171, 321 S.E.2d 602, 611 (Ct. App. 1984), revd on other grounds, 287 S.C. 190, 336 S.E.2d 472 (1985); see also Gattison v. S.C. State College, 318 S.C. 148, 152, 456 S.E.2d 414, 416 (Ct. App. 1995) (comprehensively surveying the decisional authority in our state addressing claims of intentional infliction of emotional distress and reiterating our reluctance to permit the tort of outrage to become a panacea for wounded feelings rather than reprehensible conduct).  The particularized and exacting legal standard that applies to claims of intentional infliction of emotional distress thus imposes upon our trial courts a critical gatekeeping role to ensure this tort does not become a broad catchall that is raised when other tort remedies fail.
Examining the claim in the present case, I would hold the circuit court correctly ruled there is no evidence, legally sufficient for submission to the jury, that the distress allegedly suffered by Hansson was severe within the contemplation of the rule.  Hansson conceded that ninety-nine percent (99%) of the time, no one [at the worksite] bothered [him].   Indeed, he admitted he was a willing participant in some of the alleged offensive exchanges.  Hansson testified that he, too, joked around and frequently used profanity at the construction siteeven walking around the worksite with the head of a doll in his hand, holding his hand out to co-workers and asking, do you want a little head?  Hansson in fact admitted in his deposition testimony that one of the targets of his dolls head joke was Sam Scalise, the very individual Hansson alleges was the source of much of the harassment he claims to have suffered.  On the other hand, the mental anguish Hansson claims to have endured as a result of Respondents conduct was unaccompanied by any evidentiary particulars other than vague assertions that he lost sleep and that his dentist told him he appeared to be grinding his teeth at night.  There is no evidence that Hansson ever sought treatment from a physician or any other health care provider or counselor as a result of his emotional distress.  There is also no evidence that the alleged conduct impaired Hanssons ability to perform his work. To the contrary, Hansson specifically testified the alleged harassment did not affect his ability to do his job. 
Granting the vulgar and inappropriate nature of Respondents alleged conduct towards Hansson, I nevertheless would find that, as a matter of law, this record fails to establish the fourth element of the cause of actionthat the emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.  I would therefore affirm the circuit courts grant of summary judgment on this issue.

[1]  In addition to his action for intentional infliction of emotional distress, Hanssons complaint alleged causes of action for breach of contract, slander, and wrongful retention of wages.  Although the trial court granted summary judgment on all the claims, Hanssons only issue on appeal is whether the trial court erred in granting summary judgment on the claim of intentional infliction of emotional distress.  
[2] See Ford, 276 S.C. at 162, 276 S.E.2d at 778-79 (quoting extensively from the comments to this Restatement section).
[3] Though Rhodes v. Security Finance Corp. of Landrum was decided before the express recognition of the tort of intentional infliction of emotional distress in Ford v. Hutson, it was cited with approval by the supreme court in that case.  See Ford, 276 S.C. at 161, 276 S.E.2d at 778.