### 1471

Joseph T. MOON and Margaret Ann Jones Moon, Respondents
v. Gayle H. JORDAN, Appellant.

(390 S.E. (2d) 488)

Court of Appeals

*N. Heyward Clarkson, III,* and *Jeffrey D. Ezell, Rainey, Britton, Gibbes & Clarkson,* Greenville, *for appellant.*

*James H. Cassidy, Love, Thornton, Arnold & Thomason,* Greenville, *for respondents.*

Heard Feb. 13, 1990.

Decided March 12, 1990.

SHAW, Judge:

Respondents, Joseph and Margaret Moon, brought this action against appellant, Gayle Jordan, for breach of contract. From an order of the trial court granting the Moons' motion for summary judgment on liability, Mrs. Jordan appeals. We affirm.

The case before us involves a contract entered into between the parties on May 27, 1987 whereby Ms. Jordan agreed to purchase the Moons' house for the sum of $175,000.

One of the contingencies stipulated in the contract was that Ms. Jordan receive adequate financing. A closing date of October 28, 1987 was set, however, Ms. Jordan failed to attend the closing. The Moons stood prepared to fulfill the contract on that date and later filed a complaint against Ms. Jordan alleging breach of contract.

On September 27, 1988 the Moonsj' summary judgment motion was heard before the trial judge. In her argument resisting summary judgment, Ms. Jordan contended, first, that performance was financially impossible and, secondly, adequate financing was not available to her thereby voiding the contract on the basis that a contingency was not met. The trial judge found that all the contingencies spelled out in the contract were met, including that of adequate financing. Considering the evidence in the light most favorable to Ms. Jordan, he concluded there was no genuine issue of material fact and granted the Moons' motion for summary judgment as to liability.

Ms. Jordan contends a genuine issue of material fact exists as to whether the contingency of adequate financing was fulfilled and whether performance of the contract was rendered impossible by her financial condition. We disagree.

The record before us shows that some time after entering into the contract with the Moons, Ms. Jordan applied for a loan for the purchase of the Moons' house in the amount of $140,000. On October 8, 1987 the loan was approved by the bank which committed to Ms. Jordan for the loan until November 8, 1987 at which time the commitment expired. In September and October 1987, Ms. Jordan suffered financial difficulties when the sale of her own home failed to close and her securities account incurred a substantial loss. The $140,000 loan commitment from the bank was not contingent on her maintaining the balance in her securities account present at the time she applied for the loan. Neither did it require her current residence be sold.

Clearly, the contingency of adequate financing was met when the application for the loan for the purchase of the Moons' house was approved. Ms. Jordan points to a statement in the affidavit of Jerry Peeler, the loan officer who took Ms. Jordan's application, which claimed Ms. Jordan's $140,000

loan commitment "would have been revoked based upon changed circumstances." However, Mr. Peeler admitted in his deposition that he did not approve nor disapprove loans. (*See* S.C.R.C.P. 56(e) providing, in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.") There is no basis provided for his assertion the bank would have revoked the loan. Indeed, testimony from the deposition of Mark Branstrom, a regional vice-president and manager of the bank's mortgage division familiar with the loan commitment at hand, shows the bank would have made the loan on October 28, 1987 had Ms. Jordan gone through with the closing. Finally, there is no evidence that the bank did, in fact, revoke the loan. Thus, the only reasonable conclusion is that the money for which Ms. Jordan applied in anticipation of purchasing the Moons' house was available to her on October 18, 1987, the date set for closing.

Finally, Ms. Jordan argues her performance was rendered impossible by virtue of her hampered financial condition. We find the defense of impossibility inapplicable to the case at hand.

■ Generally, if a party by his contract charges himself with an obligation possible to be performed, he must make it good unless its performance is rendered impossible by an act of God, the law, or other party. *Jones v. Bates*, 241 S.C. 189, 127 S.E. (2d) 618 (1962); 17 Am. Jur. (2d) *Contracts* § 404 (1964). Subjective impossibility, possibility which is personal to the promisor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of a contractual obligation. *B's Co. v. B.P. Barber & Assoc., Inc.*, 391 F. (2d) 130 (4th Cir. 1968). Accordingly, the fact that one is unable to perform a contract because of his inability to obtain money, whether due to his poverty, a financial panic, or failure of a third party on whom he relies for furnishing the money, will not ordinarily excuse nonperformance in the absence of a contract provision in that regard. 17 Am. Jur. (2d) *Contracts* § 415 (1964).

■ In that Mrs. Jordan failed to place any contingencies in the contract requiring that the sale of her current residence occur prior to closing or requiring she

maintain a certain balance in her securities account, her financial difficulties in these regards will not provide her with a defense. The risk that her own home would not sell or that her securities account would suffer a loss was assumed by Ms. Jordan, not by the Moons. The rights of the parties must be measured by their contract and hardship on one of the parties of no akin to the contract will not serve to alter the contract.

For the foregoing reasons, the order below is

Affirmed.

SANDERS, C.J., and GOOLSBY, J., concur.