493 S.E.2d 875

Tommy HAWKINS, Respondent,

v.

GREENWOOD DEVELOPMENT CORPORATION,
and H & T Investments, a South Carolina
General Partnership, Defendants,

of whom Greenwood Development Corporation is Appellant.

No. 2741.

Court of Appeals of South Carolina.

Heard Sept. 11, 1997.

Decided Oct. 27, 1997.

Rehearing Denied Dec. 17, 1997.

---

5. *Parker v. State Highway Dep't,* 224 S.C. 263, 78 S.E.2d 382 (1953).

Marcus A. Manos and Harold W. Jacobs, both of Nexsen, Pruet, Jacobs & Pollard; and David B. Summer, Jr., of Parker, Poe, Adams & Bernstein, Columbia, for appellant.

Steven L. Smith, of Smith & Collins, Charleston, for respondent.

HEARN, Judge:

In this action for breach of contract, Greenwood Development Corporation (Greenwood) appeals a jury verdict of $1,500,000 in favor of Tommy Hawkins. We affirm.

### Facts

Greenwood entered into a contract in January 1989 to purchase 177 acres of undeveloped property in Dorchester County from H & T Investments. H & T was owned by Tommy Hawkins and Joseph Tamsberg. The January contract was contingent on Greenwood's being able to develop "an 18–hole championship golf course, approximately 900 single family lots, plus assorted commercial property."

As part of the January contract, Greenwood agreed to build an access road on the property as set forth in paragraph 6:

Purchaser agrees that it will build an access road, beginning at the location on Dorchester Road as shown on the attached survey and which will provide access to the southeasternmost boundary of the property of Ava Bryant Hawkins, as shown on the attached survey. Said road will be constructed in accordance with the requirements of the City of North Charleston and shall be dedicated to the City of North Charleston within five (5) years from the date of closing.

After entering the January contract, Greenwood and H & T realized that the encroachment of property owned by Ava Bryant Hawkins, Tommy Hawkins' wife, would interfere with Greenwood's plans to develop the property as a golf course. Thus, in February 1989, Greenwood entered into a second contract with H & T, Joseph Tamsberg d/b/a Tamsberg Properties, Ava Bryant Hawkins, and Tommy Hawkins. Greenwood and the various parties agreed to a like-kind exchange in which Greenwood would purchase a tract of land from Tamsberg Properties and deed it to Ava Bryant Hawkins in exchange for her deeding a portion of her property to Greenwood. This exchange consolidated Greenwood's land into a single, contiguous parcel that could be used to develop a golf course.

Under the February contract, Greenwood had a continuing obligation to provide an access road to Tommy Hawkins' property. The contract states:

14. *Hawkins relocation.* Hawkins agrees and consents to the relocation of proposed Road E so that it intersects the southern half of the common boundary between the Proper-

ty and the property of Hawkins, as identified as Godley Auction Company, Inc., *as shown in Green on Exhibit B.*

15. *Hawkins Boulevard Relocation.* H & T Investments agrees that the relocation of Road E as provided in paragraph 14 shall satisfy the requirements set forth in paragraph 6 of the H & T contract and affirmatively waives the requirement that Road C be constructed as provided therein. Greenwood Development Corporation agrees to construct Road C from Dorchester Road to the relocated intersection of Road C and Road E and to construct Road E from the relocated intersection of Road C and Road E to the boundary between the Tamsberg property and the property in accordance with the requirements of the City of North Charleston and shall be dedicated to the City of North Charleston within Five (5) years from the date of closing, *all as shown in more detail on Exhibit B.* (emphasis added).

When the February contract was drafted by counsel for H & T Investments, only the green zone was identified in Exhibit B. The exact location of the new proposed Road E was not shown. During negotiations between the parties, Hawkins drew in the exact location and configuration of proposed Road E on Exhibit B to the contract before signing. In the drawing, Hawkins curved the road toward the northeast boundary of the property of Ava Bryant Hawkins. Greenwood then signed the contract, with Hawkins' hand-drawn configuration of the road appearing on the attached exhibit.

After the execution of the contract, Greenwood prepared several plats and diagrams of the proposed development which depicted Road E as curving as shown on Exhibit B of the contract. However, when Greenwood applied to the South Carolina Coastal Council and Army Corps of Engineers for permits to construct various roads across wetlands, the Council rejected the location of Proposed Road E. The reason for its rejection was that a development plan for the land owned by Hawkins had not been submitted. Greenwood subsequently built the road straight, without the curve Hawkins had drawn on Exhibit B.

Hawkins brought suit against Greenwood for breach of contract. The jury returned a verdict in favor of Hawkins for $1,500,000.

## I.

■ Greenwood argues the trial judge erred in denying its motion for judgment notwithstanding the verdict on the ground that the contract language is clear, unambiguous, and susceptible of only one interpretation. We disagree.

Greenwood argues that its only obligation under the terms of paragraph 14 of the contract was to construct a road which ended in the green zone. Hawkins argues that both paragraphs 14 and 15 of the contract refer the reader to Exhibit B which depicts the exact location of the proposed road.

■ The construction of a clear and unambiguous contract is a question of law for the court. *United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.,* 307 S.C. 102, 105, 413 S.E.2d 866, 868 (Ct.App.1992). A contract is ambiguous when the terms of the contract are inconsistent on their face, or are reasonably susceptible of more than one interpretation. 17A Am.Jur.2d *Contracts* § 338, at 345 (1991). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* It is a question of law for the court whether the language of a contract is ambiguous. 17A Am.Jur.2d *Contracts* § 339, at 346 (1991). Once the court decides that the language is ambiguous, evidence may be admitted to show the intent of the parties. The determination of the parties' intent is then a question of fact for the jury. *Id.*

■ In ruling on a motion for judgment notwithstanding the verdict, the trial court must view the evidence and its inferences in the light most favorable to the nonmoving party. *Shupe v. Settle,* 315 S.C. 510, 515, 445 S.E.2d 651, 654 (Ct.App. 1994). The court must deny the motion if either the evidence yields more than one reasonable inference or its inferences are in doubt. *Id.* The verdict will be upheld if there is any

evidence to sustain the factual findings implicit in the jury's verdict. *Id.*

We hold that the language of paragraphs 14 and 15 of the contract, together with the hand-drawn depiction of Road E on Exhibit B, created an ambiguity as to whether Greenwood was required to merely end the road in the green zone or build the road according to the exact configuration depicted on the plat. Thus, we find this was properly a question for the jury and the trial judge committed no error in denying Greenwood's motion for judgment notwithstanding the verdict. *See* 3 Arthur L. Corbin, *Corbin on Contracts* § 548, at 181–83 (1960) (Printed provisions of a contract should be harmonized, if possible, with handwritten ones. If there is an inconsistency between the two provisions, however, the handwritten provision prevails.).

## II.

■ Greenwood argues the trial judge erred in denying its motion for judgment notwithstanding the verdict on the ground that it was legally impossible for it to perform the contract as Hawkins demanded. We disagree.

■ A party to a contract must perform its obligations under the contract unless its performance is rendered impossible by an act of God, the law, or by a third party. *Moon v. Jordan,* 301 S.C. 161, 164, 390 S.E.2d 488, 490 (Ct.App.1990). Impossibility must be real and not a mere inconvenience. 17A Am.Jur.2d *Contracts* § 673, at 681 (1991). "A party to a contract cannot be excused from performance on the theory of impossibility of performance unless it is made to appear that the thing to be done cannot by any means be accomplished, for if it is only improbable or out of the power of the obligor, it is not deemed in law impossible." *Id.* A party claiming impossibility of performance has the burden of proving the defense. 17A Am.Jur.2d *Contracts* § 674, at 682 (1991).

Greenwood argues that it was impossible for it to construct the road to Hawkins' specifications because the South Carolina Coastal Council and Army Corps of Engineers denied it a permit to cross wetlands at that location. Hawkins argues that the Council rejected the permit because there was no development plan in place for the area to which the road led.

He further argues that no one at Greenwood informed him of the need for a development plan or requested such a plan from him to facilitate construction of the proposed road.

We find the trial judge properly denied Greenwood's motion for judgment notwithstanding the verdict on the ground of impossibility. Several of Greenwood's witnesses testified that it would be difficult, but not impossible, to obtain the required permits. Furthermore, the trial judge charged the jury on the defense of impossibility and allowed the jury to determine whether Greenwood had met its burden of proving the defense. We find no error.

### III.

Greenwood argues the trial judge erred in allowing Hawkins to support his claim for damages by speculating on the value of land at an intersection of proposed Road E and proposed Road A.

Hawkins' plans were to continue curved Road E onto his property and to tie it into proposed Road A to create an intersection. Both roads were proposed by the City of North Charleston, in a 1988 "Land Use and Economic Development Plan." The roads were proposed as four-lane arterial roads with estimated traffic of approximately 19,000 to 21,000 vehicles per day. Because the road is not curved, Hawkins claimed it is now impossible to create an intersection between Roads A and E on his property. Hawkins claimed this diminished his property value by $1.2 million.

Greenwood argues the trial judge erred in allowing Hawkins to base his damages on the loss of this intersection because there is no guarantee that Road A, or any of the roads proposed in the development plan, would ever be constructed. In support of this argument, Greenwood points to the testimony of William Gore, Director of Planning and Management and Zoning Administrator for the City of North Charleston. Gore testified that the roadways shown in the plan were not scheduled to be built, but were merely proposed to encourage economic development in the area.

It is the well-settled law of this State that an owner is qualified by the fact of ownership to give his or her

estimate of the value of damaged real and personal property. *Waites v. South Carolina Windstorm & Hail Under. Assoc.,* 279 S.C. 362, 366, 307 S.E.2d 223, 225 (1983); *Nelson v. Coleman Co.,* 249 S.C. 652, 660, 155 S.E.2d 917, 921 (1967). However, damages recoverable for breach of contract must either flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract. *Manning v. City of Columbia,* 297 S.C. 451, 377 S.E.2d 335 (1989).

In *Manning,* Burwell Manning conveyed a 120–acre parcel of land on the Congaree River to the City of Columbia. *Id.* at 452, 377 S.E.2d at 336. The City built a waste-water treatment plant on the site. The City's parcel of land included a portion of a fifteen-mile system of levees along the river which had been built by Manning prior to the sale. *Id.* at 452–53, 377 S.E.2d at 336. The deed from Manning to the City included a requirement that the City "maintain at its sole expense, in perpetuity, all existing dikes . . . to the height at the time of this conveyance." *Id.* at 453, 377 S.E.2d at 336.

Nine years after the conveyance, the City's portion of the levee broke in two places, allowing the river to flood an adjacent 1,806–acre parcel owned by Manning. *Id.* Manning produced evidence at trial that he suffered $119,282 in damages for losses to his soybean crop. He also introduced evidence that his land was worth $8,230,000 before the flood as commercial development real estate and was worth only $4,063,000 after the flood as agricultural property. *Id.* at 455, 377 S.E.2d at 337. The City contested the admission of the latter evidence on the ground that it was too speculative. *Id.*

Our supreme court held that Manning presented abundant evidence that the flooding of his land thwarted financing and negotiations for commercial development. *Id.* at 455, 377 S.E.2d at 338. The court held that "while this element of damages does not flow as a natural consequence of the breach, it is clear that commercial development of the property was within the parties' contemplation at the time of the contract. The deed itself refers to a projected use as an airfield." *Id.* Moreover, the court held that the conveyance of a portion of the land to the City for commercial use indicated the reason-

able probability of the continued development of adjacent parcels. *Id.* at 456, 377 S.E.2d at 338.

Similarly, the issue in this case is whether the development of Hawkins' land as commercial real estate and the construction of a major thoroughfare and intersection on his property were within the parties' contemplation at the time of the contract. Greenwood's purchase of the property for use as a golf course, residential development, and "assorted commercial property" is evidence of the probability of the continued development of adjacent parcels. Furthermore, the plat referenced as "Exhibit B" to the contract showed the location of the proposed roads, as well as the proposed intersection of Roads A and E on Hawkins' property. In fact, the plat used as Exhibit B is a portion of the City of North Charleston's 1988 Land Use and Economic Development Plan.

Greenwood's actions subsequent to the execution of the contract also indicate the parties contemplated the location and importance of the proposed intersection. Greenwood submitted several plats to the City of North Charleston, as well as to the Coastal Council, all representing Road E as drawn by Hawkins on Exhibit B. In addition, Charles Pigg, Vice President of Greenwood, stated in a letter to the Director of Planning and Management of the City of North Charleston written on the same day as the execution of the February contract:

> I am enclosing herewith two copies of a revised sketch showing the proposed road alignments for Lincoln Boulevard, roads "C" and "A" which we discussed in your office last week. Please note that the new proposed road alignment extends Lincoln Boulevard fairly straight through the Tamsberg property on through the property that we are acquiring **and gets back into Road "E" to allow for the intersection at "A" and "E" to occur in its same location. We have agreements from both Jody Tamsberg and Tommy Hawkins regarding this new proposed alignment** and wanted to forward this to you for your information. . . . **I think the proposed alignment as shown on these plans will provide the traffic circulation which you desire** as well as provide us a private entry into our private community. (emphasis added).

We therefore find that the proposed development of Hawkins' property was within the contemplation of the parties at the time of the contract, and the trial judge properly allowed this testimony.

## IV.

Greenwood argues the trial judge erred in allowing Hawkins to support his claim for damages by testifying about the sale of land at another intersection as a "comparable" sale, when Hawkins was not qualified as an expert in real estate appraisal. Greenwood also argues the trial judge erred in allowing Hawkins to testify about information from a real estate deed that was not produced during discovery and was not given to defense counsel until the second day of trial.

In testifying about the diminution in value to his property based on the loss of the proposed intersection, Hawkins testified that the land at the corners of a major intersection near his property sold for $450,000 per acre. Thus, Hawkins testified that the land on each corner of the proposed intersection on his property would be worth $2,000,000.

Greenwood argues the trial judge erred in allowing Hawkins to testify about the value of the neighboring intersection as a "comparable" intersection because Hawkins had no qualifications as a real estate appraiser and was therefore unqualified to testify about comparable property. Greenwood also argues that the deed for the sale of the neighboring lots was not produced during discovery, nor did Hawkins disclose prior to trial that he would claim damages of over $1,000,000 based on this deed.

At trial, Greenwood objected to Hawkins' testimony about the neighboring intersection on the basis that he did not disclose in discovery that he would base his damages on the value of this "comparable" intersection. Hawkins' attorney then directed the trial judge to portions of Hawkins' deposition where he stated that the land at the neighboring intersection sold for $450,000 per acre. Counsel for Greenwood then stated, "Your Honor, that still doesn't change the fact—you can disclose all kind of facts in discovery. It still doesn't change the fact that he is not qualified to offer expert opinion testimony as to the land valuation." Greenwood's counsel,

therefore, acknowledged that Hawkins had disclosed the substance of the deed in his deposition prior to trial.

Moreover, we do not believe Hawkins exceeded the bounds of proper testimony when he based the value of his own property on land values surrounding a comparable intersection. The rule that a property owner is competent to present an opinion as to the property's value is well recognized. *Lewis v. South Carolina State Highway Dept.*, 278 S.C. 170, 173, 293 S.E.2d 434, 436 (1982); *Seaboard Coast Line R.R. v. Harrelson*, 262 S.C. 43, 46, 202 S.E.2d 4, 5 (1974); *Rogers v. Rogers*, 280 S.C. 205, 209, 311 S.E.2d 743, 746 (Ct.App.1984). In *Rogers*, this court noted that an owner of property "is competent to estimate its value as a matter of law," citing *Seaboard Coast Line R.R.* and *Wigmore on Evidence.* 280 S.C. at 209, 311 S.E.2d at 746. According to *Wigmore*, "The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury." 3 John H. Wigmore, *Wigmore on Evidence* § 716, at 48 (1940).

In *Seaboard*, the South Carolina Supreme Court considered whether a property owner's *lack* of familiarity with the purchase price of other property in the vicinity should render his testimony as to value inadmissible. 262 S.C. at 46, 202 S.E.2d at 5. The court concluded that unless the owner's lack of qualification is so complete that his testimony is entirely worthless, it is for the jury to assess the weight to be accorded to his opinion. *Id.*

Here, Greenwood makes the reverse argument. In essence, Greenwood argues Hawkins should not have been permitted to testify on this issue because he was *too familiar* with property values in the neighborhood. It claims that despite Hawkins' expertise in road construction and the fact that he constructed the comparable intersection—and therefore knew about surrounding land values—he should not be permitted to base his damages on the comparable land values. We reject this argument.

An owner of property is competent to testify as to its value, and is certainly not rendered incompetent because he knows *more* than an average landowner may know about land

values in the neighborhood. We believe this holding is in accord with our supreme court's decision in *Seaboard* as well as this court's decision in *Hill v. City of Hanahan*, 281 S.C. 527, 316 S.E.2d 681 (Ct.App.1984).

In *Hill*, this court upheld the testimony of a landowner in an inverse condemnation action who stated she was knowledgeable about real property values in the neighborhood. *Id.* at 531–32, 316 S.E.2d at 684. Like Ms. Hill, Hawkins based his opinion on the damages sustained to his property on his knowledge of similar nearby parcels. Greenwood was able to cross-examine him on this testimony and presented an MAI appraiser to refute Hawkins' testimony. It was for the jury to determine the weight to be given to the testimony presented on damages. We find no error.

## V.

■ Greenwood argues the trial judge erred in allowing Hawkins to testify as an expert on matters involving the expertise of an engineer, even though Hawkins was not qualified as an engineer. Greenwood also argues the trial judge erred in allowing Hawkins to testify regarding the cost of constructing a replacement road without sufficient foundation for his opinions. We disagree.

Hawkins was qualified without objection as an expert in road building based on his thirty years of experience as a road grader and paver. Hawkins also offered himself, over Greenwood's objection, as an expert in checking layouts, radiuses, and curves. Hawkins testified that the road as built was useless to him because it was now impossible to construct a connection of Road E and Road A on his property. He testified that without the curve the road would have to turn at a ninety degree angle to eventually connect with Road A, and would therefore not be able to accommodate high traffic because of the reduced speeds the curve would require. He further testified the cost of building a replacement road was $588,354.

Greenwood argues that Hawkins should not have been allowed to testify about whether a connection with Road A could be designed because, although an experienced grader and paver, he routinely relied on specifications drawn by

engineers to perform the work. Greenwood further argues he did not set forth a sufficient basis for his testimony as to the replacement cost of the road.

To qualify as an expert, a witness must demonstrate technical expertise, usually through education, experience, or training in the particular field in which the opinion is solicited. Rule 702, SCRE. The qualification of an expert witness and the admissibility of his opinion are matters resting largely within the trial judge's discretion. *South Carolina Dep't of Highways & Pub. Trans. v. Manning*, 283 S.C. 394, 398–99, 323 S.E.2d 775, 778 (1984). We find Hawkins gave a sufficient factual basis for his opinion that it was impossible to construct a connection of the current Road E with proposed Road A on his property, and for his estimate of the cost of building a replacement road. Greenwood was, of course, free to cross-examine Hawkins on the methods he used to make these calculations; however, any defects in the amount or quality of his experience go to the weight of his testimony and not to its admissibility. *State v. Clute*, 324 S.C. 584, 595–96, 480 S.E.2d 85, 91 (Ct.App.1996), *cert. denied*, (May 27, 1997).

## VI.

Finally, Greenwood argues the trial judge erred in denying its motion for a new trial *nisi remittitur* on the ground that the jury's verdict is not supported by the evidence. We disagree.

When the jury's verdict is inadequate or excessive, the trial judge has the discretionary power to grant a new trial *nisi*. *Bailey v. Peacock*, 318 S.C. 13, 14, 455 S.E.2d 690, 691 (1995). Compelling reasons, however, must be given to invade the jury's province in this manner. *Id.* The consideration of a motion for a new trial *nisi* requires the trial judge to consider the adequacy of the verdict in light of the evidence presented. *Krepps v. Ausen*, 324 S.C. 597, 606–608, 479 S.E.2d 290, 295 (Ct.App.1996). The trial judge, who heard the evidence and is more familiar with the evidentiary atmosphere at trial, possesses a better informed view of the damages than this court. *Id.* at 608–609, 479 S.E.2d at 296. Accordingly, great deference will be given to the trial judge. *Id.* The denial of a motion for a new trial *nisi* is within the trial

judge's discretion and will not be reversed on appeal absent an abuse of discretion. *Vinson v. Hartley,* 324 S.C. 389, 405–406, 477 S.E.2d 715, 723 (Ct.App.1996).

We find the jury's verdict was within the range of damages properly presented by Hawkins during the course of trial. Thus, we find no abuse of discretion in the trial judge's denial of Greenwood's motion.

Accordingly, the jury's verdict is

AFFIRMED.

HOWELL, C.J., and STILWELL, J., concur.