UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-1279
(CA-95-3065-2-18)

Jermar, Incorporated,

Plaintiff - Appellant,

versus

L.M. Communications II of South Carolina,
Incorporated,

Defendant - Appellee.

O R D E R

The court amends its opinion filed June 11, 1999, as follows:

On page 10, first full paragraph, line 10 -- the citation is corrected to read "989 F.2d 10_0_7, 1011-12 ...."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JERMAR, INCORPORATED,
Plaintiff-Appellant,

v.

L.M. COMMUNICATIONS IIOF SOUTH
CAROLINA, INCORPORATED,                    No. 98-1279
Defendant-Appellee,

and

LYNN M. MARTIN,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-95-3065-2-18)

Argued: May 4, 1999

Decided: June 11, 1999

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

_____

Affirmed in part and vacated and remanded in part by unpublished
per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Whatley Bunch, II, ROBINSON, MCFADDEN
& MOORE, P.C., Columbia, South Carolina, for Appellant. William

Choice Cleveland, III, HAYNSWORTH, MARION, MCKAY & GUERARD, L.L.P., Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jermar, Inc. appeals from a default judgment entered against it because of repeated violations of discovery orders and from an award of attorney's fees in this breach of contract action under South Carolina law. For the reasons that follow, we affirm the district court's entry of default judgment, but we vacate and remand the district court's award of attorney's fees.

I.

In May 1995, Jermar and L.M. Communications II of South Carolina ("LMC") contracted for LMC to purchase from Jermar a South Carolina radio station, WJYQ-FM. Relations quickly deteriorated, however, and in August 1995, Jermar sued LMC and its owner, Lynn Martin, for breach of contract, chiefly because LMC refused to pay $200,000 due under a Consulting Agreement that was part of the deal. Jermar sought, among other things, recission of the sale. LMC counterclaimed, alleging that Jermar had breached the purchase agreements, including the Consulting Agreement, and requesting attorney's fees pursuant to those agreements.

During the course of the litigation, Jermar, without explanation, violated three separate court orders. In particular, Jerry Ceder, the president of Jermar, studiously avoided all efforts by LMC to depose him. On October 24, 1996, in response to LMC's motion to compel Jermar to produce Ceder for deposition, the district court ordered Jermar to propose, by November 1, dates for deposing him. The court

2

warned that disobeying this order would expose Jermar to the risk of dismissal. Nevertheless, Jermar failed to comply.

The court entered the second relevant order in January 1997, ordering mediation in South Carolina and requiring the parties' principals, including Ceder, to attend in person. Counsel for the parties agreed to carry out this order on March 26, 1997, with Ceder to be deposed on March 27 if the mediation failed. But upon arriving from Kentucky for the mediation, LMC's representatives were informed by Jermar's counsel that Ceder had decided not to attend either the mediation or the deposition. As a result, both events were canceled, and LMC filed a motion for sanctions and to dismiss. The court twice delayed a hearing on this motion in order to allow Jermar to secure an affidavit explaining Ceder's absence, but Jermar never produced one. In the meantime, the parties, including Ceder, finally conducted mediation, by telephone, in April 1997.

The court held a hearing on LMC's motion on May 20, 1997, and thereupon entered its third order. The court ordered Ceder to appear by May 28, warned that failure to do so would likely result in dismissal with prejudice, and sanctioned Jermar $1,655.24 to reimburse LMC for its expenses in traveling to the mediation. When Ceder yet again failed to appear, again with no explanation, the court, pursuant to Fed. R. Civ. P. 37(d), entered a default judgment against Jermar both on its claim against LMC and on LMC's counterclaim.

With regard to damages on the counterclaim, the court ordered Jermar to return, with interest, $125,000 that LMC had paid under the Consulting Agreement. According to the counterclaim, Jermar had breached this Agreement by failing to provide any consulting services. The court also imposed an additional $4,089 sanction as fees and expenses relating to the mediation. After a hearing on further damages (which Jermar failed to attend), the court denied LMC's request for punitive damages, but awarded $71,377.72 as "actual damages," $625 of which was for the cost of a radio tower inspection and the rest of which was for LMC's attorney's fees and expenses both in defending against Jermar's suit and in responding to Jermar's Informal Complaint with the Federal Communications Commission ("FCC"), in which Jermar had attempted to undermine LMC's effort to secure a license for the station.

3

In a subsequent order denying Jermar's motion to reconsider, the court offered three alternative bases for the award of "actual damages": (1) a provision in the parties' contract allowing LMC to offset any amount it owed Jermar by the amount of attorney's fees and costs incurred "should legal or administrative action be taken against Buyer directly or indirectly by Marvin Ceder and/or his affiliates" (Marvin Ceder being Jerry's brother and sometime business associate); (2) damages for breach of the parties' "agreement not to litigate"; or (3) a further sanction under Fed. R. Civ. P. 37(d) & 37(b)(2) "for Jermar's repeated violation of this court's orders." Jermar appeals, challenging the entry of the default judgment and arguing that there was no basis for the award of attorney's fees.

II.

We first reject Jermar's objection to the district court's entry of a default judgment. The district court's decision does not remotely amount to an abuse of discretion, given Jermar's repeated and unexplained recalcitrance during pretrial discovery.

In exercising its discretion under Rule 37 to determine whether to enter a default judgment for failure to comply with discovery orders, a district court must consider the following four factors:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

Mutual Fed. Sav. and Loan Ass'n v. Richards and Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989). Before entering a default judgment, a district court also must, in all but the most egregious cases, give the offending party a warning that it is at risk of such a sanction if it disobeys the court's order. See Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40 (4th Cir. 1995). In addition, the third and fourth factors suggest that a court usually should impose some lesser sanction before resorting to a default judgment. See Anderson v. Foundation

4

for Advancement, Educ., and Employment of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998).

The district court followed the above requirements to the letter. Besides separately addressing each of the four factors listed above, and correctly explaining how each supported the default judgment against Jermar, the court also twice warned Jermar of the risk of dismissal and, as part of its third order, in May 1997, imposed the lesser sanction of requiring Jermar to reimburse LMC for its expenses from the mediation.

Jermar offers two excuses for Ceder's repeated and unexplained failure to comply with court orders, and appears to argue that these excuses confirm the error in the district court's finding that there was "overwhelming evidence" of bad faith by Jermar and thus demonstrate that the court abused its discretion. Neither argument assists Jermar.

First, Jermar claims that Ceder lacked notice of the court's various orders, especially from May 1997 forward. But Ceder's alleged ignorance (if that it was) was no one's fault but his own, the result of his carefully devised plan of noncommunication with his counsel. Ceder, who lives in Miami, Florida, only allowed his attorney to communicate with him through a voice-mail box that frequently deleted unopened messages. Yet, at the same time, he allowed his doctor to send him letters to a street address. In fact, counsel for Jermar sought to withdraw in frustration in the summer of 1997, a request that the court granted because Ceder had "failed to respond or otherwise communicate with him."

Second, Jermar claims that Ceder was incapacitated due to a heart condition and depression. But these claims of medical ailments were disclosed to the court only belatedly (four months after the court entered its default judgment, despite earlier requests from the court and promises from Jermar to explain Ceder's conduct), have no bearing on Ceder's failure to communicate with the court and counsel (as counsel for Jermar admitted at oral argument), and are unconvincing. On the last point, the affidavit and letters of Jermar's doctor, even if completely correct, merely establish that Ceder, on or "near May 29, 1997," had a "reasonably high probability" of having some heart dis-

5

ease and exhibited what appeared to that doctor (a cardiologist, not a psychiatrist) to be symptoms of depression. Neither alleged condition establishes an inability to communicate or participate in the litigation that Ceder himself had instigated, and Ceder's participation in the telephone mediation only a month before belies such a claim. Even if Ceder was incapacitated in late May, at the time of the third order, that incapacity cannot justify his violation of the first two orders. We therefore conclude that the district court did not abuse its discretion in entering the default judgment.

III.

The district court offered three rationales for its award of over $70,000 in attorney's fees and expenses to LMC:[1] a provision in the contract between Jermar and LMC allegedly providing for such an award; damages for violating an agreement not to litigate; and additional sanctions under Fed. R. Civ. P. 37. We conclude that only the third of these was proper. However, because the district court did not, as Rule 37 requires, limit the award to fees "caused by" Jermar's failure to obey discovery orders in this litigation, we vacate the award and remand for the district court to redetermine the proper amount of fees and expenses.

The first reason that the district court offered for awarding attorney's fees to LMC was that the parties contracted for such an award. As part of the sale of the radio station, Jermar and LMC entered into both a Purchase Agreement and a Supplemental Agreement. A provision of the latter reads as follows:

> 7.10 <u>Right of Offset</u>. As an additional remedy, the Buyer shall have the right to offset sums due pursuant to the Purchase Agreement and this Agreement by sums expended by the Buyer as attorney's fees and costs should legal or administrative action be taken against Buyer directly or indirectly by Marvin Ceder and/or his affiliates.

_____

[1] Jermar does not contest the $625 award for the tower inspection, which we therefore affirm.

6

The district court held that "affiliates" was ambiguous, and thus that its meaning was a question of fact. Because the order of default judgment "deemed admitted [ ] all factual allegations of LMC's counterclaim as true," and because LMC's counterclaim alleged that Jermar was Marvin Ceder's affiliate, the court concluded that the parties contracted for LMC to receive attorney's fees. We reject this reasoning, however, because section 7.10 is not ambiguous and cannot under any reasonable interpretation include Jermar as an affiliate of Marvin Ceder.

Under South Carolina law, "[t]he construction of a clear and unambiguous contract is a question of law for the court." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (Ct. App. S.C. 1997), cert. denied (S.C. 1998). Only if the court determines that the contract is ambiguous does its meaning become a question of fact. Id. at 878-79.

We see nothing ambiguous in section 7.10. "Affiliate" is a well-established term in the business context, and always denotes some significant degree of control between two entities. See, e.g., Black's Law Dictionary 58 (West 6th ed. 1990) (defining "affiliate" as "signif[ying] a condition of being united; being in close connection, allied, associated, or attached as a member or branch," and defining "affiliated company" as a "[c]ompany effectively controlled by another company"). Usage in South Carolina accords with this meaning. See, e.g., Phillips v. Periodical Publishers' Serv. Bureau, 388 S.E.2d 787, 788-89 (S.C. 1989) (describing corporate subsidiary as "affiliate" of its parent); S.C. Code § 35-2-201 (business combinations statute, defining "affiliate" as "a person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a specified person").

The Supplemental Agreement, which nowhere defines "affiliates," gives no indication that this standard meaning should not apply to section 7.10. On the contrary, the only other use of "affiliates" in the purchase agreements confirms that this meaning should apply. Section 4.10 of the Supplemental Agreement relieves the Seller (Jermar) of certain obligations if "the Buyer or any of its agents, employees or affiliates" cause the landlord of a certain radio tower to terminate Jermar's lease of that tower. In this context, "affiliates," like "agents"

7

and "employees," refers to persons or entities controlled by, and thus able to speak on behalf of, LMC.

Under the established definition of "affiliates," there is no doubt that, because Jermar was not controlled by Marvin Ceder, it was not his affiliate. The Supplemental Agreement makes clear that although Marvin Ceder very much desired to control Jermar, he did not actually have any control, and indeed sued to acquire it. Section 6 refers to Marvin Ceder's suit against Jermar and Jerry Ceder, filed two weeks before the closing on the sale of WJYQ, in which Marvin Ceder sought to prevent the sale and alleged that Jerry Ceder (the sole shareholder and officer of Jermar) had breached an agreement to hand ownership of Jermar to Marvin. It would surely be odd were we to conclude that the same party that Marvin had just sued for acting contrary to his wishes, one in which he held no shares or position, was also, somehow, controlled by him and thus his affiliate under section 7.10. Rather, the purpose of that section is, as it says, to provide LMC an "additional remedy" against the very real risk of being harassed by Marvin Ceder or some entity controlled by him, as part of Marvin's campaign to <u>acquire</u> control of Jermar. And the section provides this remedy by transferring the cost of such harassment from LMC to Jermar through the offset provision. It does not provide what would manifestly have been untrue -- that Jermar was an affiliate of Marvin -- and the district court erred in concluding otherwise.

We also reject the district court's second rationale for attorney's fees, because the court relied on an agreement that the parties never made. The district court held that one ground for its award was Jermar's breach of "[a]n agreement not to litigate." Although the court did not point to any particular provision of the Supplemental Agreement as evidence of this agreement, the court's paraphrase of section 7.10, which we quoted above, leaves no doubt that it was relying on that section. <u>See</u> J.A. at 796 ("One goal of the Supplemental Agreement was to prevent litigation by Marvin Ceder or his affiliates."). But section 7.10 is not an agreement not to litigate. Rather, it actually anticipates litigation (although by Marvin Ceder, not by Jermar) and merely provides, as discussed above, the limited remedy to LMC of

8

offsetting attorney's fees from that litigation against any money owed Jermar.**2**

The district court was correct, however, to rely on Rule 37 to support the attorney's fees, but because that Rule cannot support the amount awarded by the court, we vacate and remand the damages award in order to permit the district court to recalculate a permissible award. Rule 37(b)(2) arms a district court with several means of sanctioning a "fail[ure] to obey an order to provide or permit discovery." It concludes by providing as follows:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Thus this rule**3** by its terms only authorizes attorney's fees "caused

_____

**2** LMC now argues that the court was actually relying on section 7.3 (a warranty that neither Jermar nor Marvin Ceder would, among other things, interfere with LMC's "enjoyment of the FCC Licenses" or attempt to interfere with Jermar's performance of its obligations under the sales contracts), but the court never so much as cited this section in either its initial award of attorney's fees or its subsequent order explaining that award, nor did LMC cite section 7.3 in its claim for attorney's fees in its counterclaim, instead relying solely on section 7.10. In any event, even if section 7.3 were an agreement not to litigate, it does not provide for attorney's fees as a remedy for its violation and so could not, under South Carolina law, support the district court's award. See Blumberg v. Nealco, Inc., 427 S.E.2d 659, 660 (S.C. 1993) ("The general rule is that attorney's fees are not recoverable unless authorized by contract or statute."); Bunnett v. Smallwood, 793 P.2d 157, 161-62 (Colo. 1990) (leading case adopting rule of "most jurisdictions" that "attorney fees and costs should not be awarded for breach of a release unless (1) the agreement expressly provides that remedy, or (2) such an award is permitted by statute or court rule"). LMC has offered no argument for why the rule of Blumberg should not apply in this case.

**3** Rule 37(d), which addresses failure to appear at a deposition, contains essentially identical language.

9

by" disobedience of a discovery order. See Toth v. Trans World Airlines, 862 F.2d 1381, 1385-85 (9th Cir. 1988) ("Expenses incurred outside of this particular context are not provided for in Rule 37(b)(2)."); Basch v. Westinghouse Elec. Corp., 777 F.2d 165, 174-75 (4th Cir. 1985) (upholding award of sanctions under Rule 37(d) because they "were tailored narrowly to the extra costs caused by plaintiffs' misconduct in discovery").

The district court, rather than determining how much of LMC's attorney's fees were caused by Jermar's disobedience, instead granted fees not only for the entire suit between LMC and Jermar but also for LMC's defense of itself before the FCC. This was error.**4** See Stillman v. Edmund Scientific Co., 522 F.2d 798, 801 (4th Cir. 1975) ("Since . . . the sanctions authorized under [Rule 37] must pertain to the discovery process, no assessment may be made for expenses which were incurred independent of that process."). Although Rule 37(b)(2) may on occasion justify an award of all attorney's fees incurred by a party in an action, see Comiskey v. JFTJ Corp., 989 F.2d 1007, 1011-12 (8th Cir. 1993), even if such were the case here (which it may very well be), the district court would still have erred by reaching beyond even that outer boundary. On remand, the district court should award to LMC only the attorney's fees "caused by" Jermar's disobedience of discovery orders in this case, which, at the very least, would not include attorney's fees associated with the action before the FCC.

IV.

Accordingly, we affirm the district court's entry of a default judgment against Jermar, vacate the award of attorney's fees to LMC, and remand for further proceedings with regard to attorney's fees under Rule 37.

AFFIRMED IN PART, VACATED AND REMANDED IN PART
_____

**4** LMC seems aware of this. See Appellee's Br. at 36 (stating that Rule 37 "provides additional support, at least in part, for an award of attorney's fees and expenses") (emphasis added).

10