716 S.E.2d 295

**V.E. AMICK & ASSOCIATES, LLC, Respondent,**

v.

**PALMETTO ENVIRONMENTAL GROUP, INC., Appellant.**

No. 4860.

Court of Appeals of South Carolina.

Heard May 4, 2011.

Decided Aug. 10, 2011.

---

540

Charles E. Carpenter, Jr., Carmen V. Ganjehsani, and Edward M. Woodward, Jr., all of Columbia, for Appellant.

Wesley D. Peel, of Columbia, for Respondent.

GEATHERS, J.

In this breach of contract action, Palmetto Environmental Group, Inc. (Palmetto) argues (1) the trial court erred in denying Palmetto's motion for a directed verdict because Palmetto's performance was excused due to V.E. Amick &

Associates, LLC's (Amick's) failure to hire a Department of Health and Environmental Control (DHEC) qualified engineer to certify Palmetto's work and (2) the trial court erred in denying Palmetto's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial *nisi remittitur* because Amick will receive $137,650 in future contract payments from DHEC, and this amount should have been offset from the jury's verdict. We affirm on both points.

## FACTS/PROCEDURAL HISTORY

Amick is a DHEC certified company that performs remediation construction projects to rectify environmental contamination caused by petroleum products. Palmetto is also an environmental contracting company that remediates soil and groundwater contamination caused by petroleum products. Jimmy Cooper, Palmetto's owner and principal shareholder, was formerly employed by David Jordan and David Snodgrass, the owners of a large construction enterprise including Amick, L–J Incorporated, and Environmental Engineering. After Cooper was fired, he formed Palmetto and began bidding for DHEC remediation projects through Amick.

Cooper assembled bids for three remediation projects (the Huse site, the Cromer's Grocery site, and the Lakeside Market site) so that Amick could submit the bids to DHEC for approval. Amick would mark up Palmetto's estimates by 10% and submit the bid to DHEC in exchange for furnishing Palmetto with performance bonds[1] required by DHEC. DHEC awarded Amick all three contracts, and Amick subcontracted 100% of the DHEC contracts to Palmetto. All of the contracts between Amick and Palmetto were oral.

During trial, Cooper testified Palmetto submitted invoices and was paid by Amick on a percentage basis once the company reached each reduction milestone set by DHEC. Cooper explained DHEC set four separate target level milestones of 25%, 50%, 75%, and 100% relating to the percentage of reduction of petroleum in the groundwater. Cooper agreed to reach 100% of the ultimate clean-up target levels set by

---

1. DHEC required a performance bond for each contract to guarantee Amick would be completing the work. If for any reason Amick failed to complete the work, DHEC could collect the entire amount of the bond.

DHEC in exchange for 90% of the DHEC contract with Amick. Once Palmetto met a certain milestone, DHEC would pay Amick, and Amick would in turn remit 90% of the DHEC payment to Palmetto.

Palmetto reached the 75% target level milestone on all three contracts at issue before the company ceased working. Cooper claimed Palmetto actually completed each project to between 95% and 98% of the ultimate target levels, but he admitted that he submitted no more invoices to Amick after reaching the 75% milestone. Cooper conceded the biggest reason he failed to meet the ultimate target levels for the reduction of petroleum was that his company ran out of money and could no longer operate. Cooper also admitted Palmetto was paid for all the invoices it submitted to Amick.

After Palmetto ceased working on the three sites, Amick hired Carolina Technical Services, Inc. (CTSI) to complete the groundwater remediation contracts. Bill Wood, a CTSI employee, testified at trial on Amick's behalf and was qualified as an expert in groundwater assessment and remediation. Wood testified the estimated cost to complete the Lakeside Market contract would be $88,297. Wood further testified it would cost an estimated $121,059 to complete remediation on the Huse site. Finally, Wood noted it would cost an estimated $78,037 to complete remediation on the Cromer's Grocery site.

Wood testified Amick was paying CTSI on a "time and materials" basis, unlike the Amick contract with Palmetto. Specifically, Wood explained CTSI was receiving progress payments on a rolling basis, and the company did not have a contract with Amick to complete the projects to 100% of DHEC's ultimate target levels.

Hugh Wilson, an employee of L–J Incorporated, testified DHEC was aware Amick had hired CTSI to complete the three projects after Palmetto failed to do so. Wilson also testified regarding Amick's damages and explained "the way we look at it is what we spent today on the project plus the estimated cost of completion furnished by CTSI and crediting back the amount of the Palmetto subcontract...." Wilson testified the total amount needed to complete all three jobs and make Amick whole, after subtracting payments from

DHEC intended for Palmetto, would be "a little over $391,000."

Wilson noted this amount represented the total payments to Palmetto and CTSI to date, plus the estimated cost for CTSI to complete remediation, less 90% of the amount of the original contract between Amick and DHEC (for specific damages amounts, see charts in Section II of this opinion). In other words, Wilson took the total amount Amick would end up paying both subcontractors on the three contracts with DHEC and subtracted the total amount Amick would have paid to Palmetto had Palmetto fully performed its contract with Amick. Palmetto's counsel did not question the accuracy of any of the stated figures during Wilson's cross-examination.

At the close of Amick's case, Palmetto moved for a directed verdict on multiple grounds, including the contention that it "would have been illegal until Amick . . . hired another [professional licensed engineer] as an employee to continue to certify completion to DHEC." The trial court denied Palmetto's directed verdict motion, noting:

> [A]ll that stuff about the regulation about having a qualified person doesn't matter. DHEC accepted those things, correspondence, all that stuff in there. They can hire somebody to certify it. [Cooper] tried to get his brother one time. But anyway, no evidence that anything was ever kicked out because it was not certified. [Cooper] admittedly got paid 75 percent. And in the light most favorable to him, he had done 95 percent of the work and they've got 25 percent of the money. The fact that DHEC now wants a pristine situation, which it probably can't do, indicates that the job was underbid to start with.

Palmetto did not present any evidence in its own defense.

The trial court charged the jury as follows regarding the law of damages:

> In the event of a failure to complete performance of a contract according to its terms, including a construction contract or subcontract, the injured party is entitled to such compensation which would leave it as well off as it would have been had the contract been fully performed. Measure of damages ordinarily is the reasonable cost of completion of

the same work if completion is possible and does not involve unreasonable economic wait.

The jury returned with a verdict for Amick in the amount of $391,209.21. Palmetto's counsel moved for a judgment notwithstanding the verdict, or in the alternative, a new trial *nisi remittitur*. The trial court noted, "It is actually too much money, isn't it?" The trial court further stated, "I don't think they could have, in fairness, issued that whole amount against him when he was deducting the 25 percent. But I didn't see the figures. Maybe they did." Finally, the trial court suggested "$391,000 is too high, but it can stand if it was there. It should be something less than that. If he had completed the job he would have only gotten much less...."

The trial court encouraged the parties attempt to settle the case, and gave them a week to do so. The trial court also denied all post-trial motions except the motion for a new trial *nisi remittitur*. During the post-trial hearing, Palmetto's attorney argued frustration of purpose because Amick's only engineer left the company in 2001, leaving no one to certify Palmetto's work to DHEC. Palmetto also argued the amount of damages presented during trial was speculative because it included future payments to CTSI. The trial court noted, "Unfortunately, sufficient evidence presented during the trial sustains the verdict. It's pretty high considering what he was paid and what's left to be done, but I have no way of cutting it down to a figure that anybody can live with." The trial court denied Palmetto's new trial *nisi remittitur* motion and entered a judgment for the full amount of the jury's verdict. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in denying Palmetto's motion for a directed verdict because Palmetto's performance was excused due to Amick's failure to hire a DHEC-qualified engineer to certify Palmetto's work?

2. Did the trial court err in denying Palmetto's motion for a judgment notwithstanding the verdict or a new trial *nisi remittitur* because Amick will receive $137,650 in future contract payments from DHEC, and this amount should have been offset from the jury's verdict?

## LAW/ANALYSIS

### I. Directed Verdict

Palmetto argues the trial court erred in denying its directed verdict motion on the grounds of frustration of purpose and impossibility. Palmetto contends its performance was excused because Amick failed to employ another registered engineer as required by DHEC regulations after Eugene Amick retired due to illness. We disagree.

"In ruling on directed verdict or [judgment notwithstanding the verdict] motions, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions." *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). "The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt." *Id.* "This Court will reverse the trial court only when there is no evidence to support the ruling below." *Id.* "Further, a trial court's decision granting or denying a new trial will not be disturbed unless the decision is wholly unsupported by the evidence or the court's conclusions of law have been controlled by an error of law." *Id.*

"A party to a contract must perform its obligations under the contract unless its performance is rendered impossible by an act of God, the law, or by a third party." *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 593, 493 S.E.2d 875, 879 (Ct.App.1997). "Impossibility must be real and not a mere inconvenience." *Id.* "A party to a contract cannot be excused from performance on the theory of impossibility of performance unless it is made to appear that the thing to be done cannot by any means be accomplished, for if it is only improbable or out of the power of the obligor, it is not deemed in law impossible." *Id.* (internal quotation marks and citation omitted). "A party claiming impossibility of performance has the burden of proving the defense." *Id.*

Palmetto argues performance was impossible because after Eugene Amick retired from Amick, Amick did not employ a full-time engineer or geologist to sign and certify Palmetto's submissions. In support of its argument, Palmetto cites a DHEC regulation relating to the qualifications for

certified site rehabilitation contractors and contends Amick did not comply with this regulation. *See* 25A S.C.Code Ann. Regs. § 61–98 (Supp.2010) (listing the qualifications for an applicant to become certified as a site rehabilitation contractor and noting one method of becoming certified is for a company to employ a full-time permanent employee who is registered as a professional engineer or geologist in the State of South Carolina and who has at least three years of applicable experience).

The DHEC regulation Palmetto relies upon did not make performance of the contracts impossible as a matter of law. At best, the evidence yields more than one inference or its inference is in doubt. *See Sabb,* 350 S.C. at 427, 567 S.E.2d at 236 (noting a trial court must deny a directed verdict motion when the evidence yields more than one inference or its inference is in doubt). Section IV(A)(4) of regulation 61–98 relates to the requirements for a site rehabilitation contractor to become certified. Section V(A)(3) of the same regulation lists actions that permit DHEC to decertify a previously certified contractor. Finally, section V(A)(10) allows DHEC to make exceptions for a decertified or suspended contractor to continue working on a particular site on a case-by-case basis. Therefore, DHEC had the responsibility to decertify or suspend Amick's certification if the company failed to maintain proper qualifications pursuant to section IV(A)(4) or to make an exception for Amick to complete its contracts pursuant to section V(A)(10). Until DHEC determined decertification or suspension was necessary, performance of these contracts remained possible. *Hawkins,* 328 S.C. at 593, 493 S.E.2d at 879 ("A party to a contract cannot be excused from performance on the theory of impossibility of performance unless it is made to appear that the thing to be done cannot by any means be accomplished, for if it is only improbable or out of the power of the obligor, it is not deemed in law impossible.").

Even viewing the evidence in the light most favorable to Palmetto, it was merely an inconvenience, and not an impossibility, for Palmetto to continue to work and be paid after Eugene Amick retired from the company. *See Hawkins,* 328 S.C. at 593, 493 S.E.2d at 879 ("Impossibility must be real and not a mere inconvenience."). Bill Wood, CTSI's employee, testified none of the reports submitted by CTSI on behalf of

Amick to DHEC had been rejected, even though the geologist who submitted the reports was not an Amick employee. Furthermore, Amick presented evidence that DHEC continued to certify CTSI's submissions and make progress payments after Eugene Amick retired. Amick entered one of CTSI's reports into evidence without objection.[2] The record reflects that a CTSI employee signed the report and submitted it to DHEC on Amick's letterhead. Finally, Cooper admitted that the reason Palmetto ceased working on these projects and failed to reach the 100% milestone was because his company ran out of money, not because of impossibility of performance.

Evidence in the record supports the trial court's ruling because the evidence yields more than one inference or its inference is in doubt. *See Sabb*, 350 S.C. at 427, 567 S.E.2d at 236 (noting a trial court must deny a directed verdict motion when the evidence yields more than one inference or its inference is in doubt); *id.* (stating an appellate court will reverse the trial court's decision to deny a directed verdict motion only when no evidence supports the ruling below). Accordingly, we affirm the trial court's denial of Palmetto's directed verdict motion.

## II.  Judgment Notwithstanding the Verdict/New Trial Nisi Remittitur

Palmetto argues it is entitled to a judgment notwithstanding the verdict (JNOV) or a new trial *nisi remittitur* because the jury's award of damages in the amount of $391,209.21 did not take into account $137,650 in future contract payments from DHEC to Amick. We disagree.

▮▮▮▮ "[A] motion for JNOV under Rule 50(b), SCRCP[,] is a renewal of a directed verdict motion." *Wright v. Craft*, 372 S.C. 1, 20, 640 S.E.2d 486, 496 (Ct.App.2006). "In ruling on a motion for [JNOV], the trial court must view the evidence and its inferences in the light most favorable to the

---

2. The portion of the trial in which this evidence was actually entered is not included in the record on appeal. However, the trial court noted on the record that Palmetto made no objection when Amick entered into evidence three notebooks full of invoicers and reports relating to the three disputal contracts. Furthermore, these materials were included in the record on appeal.

nonmoving party." *Hawkins,* 328 S.C. at 592, 493 S.E.2d at 879. "The court must deny the motion if either the evidence yields more than one reasonable inference or its inferences are in doubt." *Id.* "The verdict will be upheld if there is *any evidence* to sustain the factual findings implicit in the jury's verdict." *Id.* at 592–93, 493 S.E.2d at 879 (emphasis added).

"When the jury's verdict is inadequate or excessive, the trial judge has the discretionary power to grant a new trial *nisi.*" *Id.* at 600, 493 S.E.2d at 883. "The denial of a motion for a new trial *nisi* is within the trial judge's discretion and will not be reversed on appeal absent an abuse of discretion." *Id.* at 600–01, 493 S.E.2d at 883. However, the trial court must provide compelling reasons for invading the province of the jury. *Green v. Fritz,* 356 S.C. 566, 570, 590 S.E.2d 39, 41 (Ct.App.2003). "The consideration of a motion for a new trial *nisi* requires the trial judge to consider the adequacy of the verdict in light of the evidence presented." *Hawkins,* 328 S.C. at 600, 493 S.E.2d at 883. "The trial judge, who heard the evidence and is more familiar with the evidentiary atmosphere at trial, possesses a better informed view of the damages than [an appellate] court." *Id.* "Accordingly, great deference will be given to the trial judge." *Id.*

We first address Palmetto's JNOV motion. The record contained evidence to sustain the factual findings implicit in the jury's verdict. *See Hawkins,* 328 S.C. at 592–93, 493 S.E.2d at 879 ("The verdict will be upheld if there is *any evidence* to sustain the factual findings implicit in the jury's verdict.") (emphasis added). Specifically, Wilson's testimony concerning damages appears to account for future payments from DHEC to Amick. Wilson noted he subtracted 90% of the entire original contract amount on all three contracts to offset payments issued by DHEC when he calculated the total amount needed to make Amick whole on these projects. This calculation was proper as Palmetto was only entitled to 90% of the original contract price. "Above and beyond what we would have paid [Palmetto]," Wilson estimated the total cost to make Amick whole on all three contracts would be a little over $391,000. The actual jury verdict was $391,209.21, which is slightly over $391,000. Therefore, we affirm the trial court's decision to deny Palmetto's JNOV motion.

■ We next address Palmetto's new trial *nisi remittitur* motion. The following chart lists all of the damages figures presented during trial:

|  | Lakeside Market Site | Cromer's Grocery Site | Huse Site | Total for all three contracts: |
|---|---|---|---|---|
| Amick's Past Payments to CTSI | 73,001.94 | 51,073.11 | 103,626.01 | 227,701.06 |
| Amick's Estimated Future Payments to CTSI | 88,297 | 78,037 | 121,059 | 287,393 |
| Amick's Past Payments to Palmetto | 105,975 | 166,657.50 | 99,022.50 | 371,655 |
| Amount of the DHEC Contract Apportioned to Palmetto[3] | (141,300) | (222,210) | (132,030) | (495,540) |
| TOTAL DAMAGES: | 126,273.94 | 73,557.76 | 191,677.51 | 391,509.21 |

In the alternative, the jury could likewise have calculated the verdict of $391,209.21 by tallying Amick's total payments to CTSI ($515,094.06), and then subtracting 90% of $137,650, representing the future payments from DHEC to Amick ($515,094.06–$123,885 = $391,209.06). This figure reflects the difference in the total amount Amick will pay to CTSI as a result of Palmetto's breach and the amount Amick would have paid to Palmetto on the remaining milestone had the original contract been fulfilled. This verdict also takes into account the remaining 25% that DHEC will pay to Amick on the unfinished portion of all three contracts ($137,650 = 25% of $550,600). Therefore, the verdict was a reasonable measure of the cost to complete the contracts after Palmetto failed to do so.

---

3. This row represents 90% of the original contract amount between Amick and DHEC, which would have been apportioned to Palmetto. These amounts were subtracted from the damages figures in reaching the final damages estimation.

The following chart of damages reflects this second possible method by which the jury could have reached its verdict given the evidence presented at trial:

|  | Lakeside Market Site | Cromer's Grocery Site | Huse Site | Total for all three contracts: |
|---|---|---|---|---|
| Amick's Past Payments to CTSI | 73,001.94 | 51,073.11 | 103,626.01 | 227,701.06 |
| Amick's Estimated Future Payments to CTSI | 88,297 | 78,037 | 121,059 | 287,393 |
| Remaining Unpaid Portion of original DHEC Contract Apportioned to Palmetto | (35,325) | (55,552.50) | (33,007.50) | (123,885) |
| TOTAL DAMAGES: | 125,973.94 | 73,557.61 | 191,677.51 | **391,209.06** |

The actual jury verdict was $391,209.21, which is virtually identical to the figure generated by this second feasible calculation method.[4]

Because the record contains adequate evidence to support the jury's verdict, we conclude the trial court did not abuse its discretion in denying Palmetto's motion for a new trial *nisi remittitur*. *See Hawkins*, 328 S.C. at 600, 493 S.E.2d at 883 ("The consideration of a motion for a new trial *nisi* requires the trial judge to consider the adequacy of the verdict in light of the evidence presented."); *id.* at 600–01, 493 S.E.2d at 883 ("The denial of a motion for a new trial *nisi* is within the trial judge's discretion and will not be reversed on appeal absent an abuse of discretion.").

---

4. We recognize the fifteen-cent discrepancy in these two figures, but we find this minor error in calculation was harmless as it was a nominal sum.

## CONCLUSION

We affirm the trial court's decision to deny Palmetto's directed verdict motion, JNOV motion, and motion for a new trial *nisi remittitur*.

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.